## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Zara Moss, | : | |
| | : | |
| Plaintiff, | : | Case No. 4:22-cv-00529-MWB |
| | : | |
| v. | : | (Chief Judge Matthew W. Brann) |
| | : | |
| The Pennsylvania State University | : | |
| | : | |
| -and- | : | Electronically Filed |
| | : | |
| Maestro Wieslaw Glon (in his | : | |
| individual and official capacities), | : | |
| | : | |
| Defendants. | : | |

## BRIEF IN SUPPORT OF
## THE PENNSYLVANIA STATE UNIVERSITY'S
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

James A. Keller (PA 78955)
Amy L. Piccola (PA 208888)
Shane P. Simon (PA 319643)
SAUL EWING ARNSTEIN & LEHR LLP
Centre Square West
1500 Market St., 38th Floor
Philadelphia, PA 19102
P: 215-972-1964//8405//7160
james.keller@saul.com
amy.piccola@saul.com
shane.simon@saul.com

40148354.11

## <u>TABLE OF CONTENTS</u>

Page

I.    PROCEDURAL HISTORY.........................................................................3

II.   STATEMENT OF ALLEGED FACTS......................................................3

    A.    MOSS'S FENCING CAREER AT THE UNIVERSITY......................................3

    B.    MOSS'S MARCH 10, 2021 MEETING WITH THE UNIVERSITY. .................5

III.  STATEMENT OF QUESTIONS PRESENTED.......................................6

IV.   ARGUMENT.............................................................................................7

    A.    APPLICABLE LEGAL STANDARD. ..........................................................7

    B.    THE COURT SHOULD DISMISS MOSS'S TITLE IX CLAIM (COUNT I)
          BECAUSE THE CLAIM IS PRIMARILY BASED ON ALLEGED CONDUCT THAT
          IS NOT ACTIONABLE UNDER THE APPLICABLE STATUTE OF LIMITATIONS
          AND THE REMAINING ALLEGATIONS (1) DO NOT RISE TO THE LEVEL OF
          EITHER SEVERE OR PERVASIVE SEX-BASED HARASSMENT AND (2) DO NOT
          DEMONSTRATE HOW MOSS WAS DENIED ANY EDUCATIONAL BENEFIT OR
          OPPORTUNITY. ......................................................................................8

          1.    *Count I must be dismissed to the extent it relies on allegations
              of conduct occurring prior to April 11, 2020. ...........................9*

          2.    *Moss fails to state a Title IX claim for deliberate indifference
              because the bulk of her allegations do not concern sex-based
              discrimination—and those that arguably do concern sex-based
              discrimination are insufficient to qualify as severe and
              pervasive under Title IX.............................................................13*

          3.    *Moss fails to plausibly plead a Title IX deliberate indifference
              claim because the University lacked actual knowledge of the
              alleged discrimination until March 10, 2021, and the
              Complaint does not allege that Moss was subjected to further
              harassment after that date. ......................................................21*

40148354.11

C.    COUNT II ("NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS") AND COUNT III (RESPONDEAT SUPERIOR) MUST BE DISMISSED BECAUSE (1) THE UNIVERSITY'S CONDUCT WAS NOT "EXTREME AND OUTRAGEOUS" AND MOSS HAS FAILED TO PLEAD FACTS SUGGESTING SHE EXPERIENCED "SEVERE" EMOTIONAL DISTRESS; (2) MOSS HAS FAILED TO PLEAD A CLAIM FOR NEGLIGENCE; AND (3) MOSS HAS FAILED TO PLEAD SUFFICIENT FACTS TO SHOW THAT GLON'S ALLEGED ACTIONS WERE COMMITTED IN THE SCOPE OF HIS EMPLOYMENT. .......................................................................24

1.    *The IIED claim must be dismissed because Moss has not pled: (a) "extreme and outrageous" conduct or (b) "severe" emotional distress and a resulting longstanding or chronic physical injury.*............................................................25

2.    *Moss's NIED claim should be dismissed because she has failed to plausibly allege that the University owed her a duty.*..........29

3.    *The University is not vicariously liable for Glon's alleged actions because Moss has failed to allege sufficient facts that plausibly show that Glon's alleged actions were in furtherance of the University's mission.*......................................................31

V.    **CONCLUSION** .............................................................................34

40148354.11

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................7

*B.W. v. Career Tech. Ctr. of Lackawanna Cty.*, 422 F. Supp. 3d 859
    (M.D. Pa. 2019) ........................................................................22

*Bissett v. Verizon Wireless*, 401 F. Supp. 3d 487 (M.D. Pa. 2019) ...................31, 33

*Bougher v. Univ. of Pittsburgh,* 882 F. 2d 74 (3d Cir. 1989) ....................................9

*Buttermore v. Loans*, No. CV 15-1514, 2016 WL 308875
    (W.D. Pa. Jan. 25, 2016)...............................................................28

*Cain v. Dep't of Pub. Welfare, Office of Secretary Reconsideration Unit*,
    442 Fed. App'x 638 (3d Cir. 2011) ....................................................10

*Chinoy v. Pennsylvania State Univ.*, No. 11-CV-01263, 2012 WL 727965
    (M.D. Pa. Mar. 6, 2012)............................................................10, 12

*Chisholm v. St. Marys City Sch. Dist. Bd. of Ed.*, 947 F. 3d 342
    (6th Cir. 2020)..............................................................14, 15, 16, 18

*Chuy v. Phila. Eagles Football Club*, 595 F. 2d 1265 (3d Cir. 1979)....................31

*Connelly v. Lane Const. Corp.*, 809 F.3d 780 (3d Cir. 2016) ...................................8

*Cunning v. West Chester Univ.*, 2021 WL 765729 (E.D. Pa. Feb. 25, 2021) .........23

*Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*,
    526 U.S. 629 (1999)................................................................18, 20

*Doe v. McDonald's USA, LLC*, 504 F. Supp. 3d 360 (E.D. Pa. 2020)...................33

*Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545 (3d Cir. 2017) ............................12

*Dorley v. South Fayette Tp. School Dist.*, 129 F. Supp. 3d 220 (W.D. Pa. 2015)...17

*Folkes v. New York Coll. of Osteo. Med. of New York Inst. of Tech.*,
    214 F. Supp. 2d 273 (E.D.N.Y. 2002) ................................................12

40148354.11

*Ghrist v. CBS Broad., Inc.*, 40 F. Supp. 3d 623 (W.D. Pa. 2014) ..........................28

*Gjeka v. Del. Cnty. Cmty. Coll.*, No. 12-4548, 2013 WL 2257727
    (E.D. Pa. May 23, 2013) ...................................................................................11

*Haley v. Clarksville-Montgomery Cnty. Sch. Sys.*,
    353 F. Supp. 3d 724 (M.D. Tenn. 2018) ..........................................................12

*Hall v. Millersville Univ.*, 22 F. 4th 397 (3d Cir. 2022) ................................9, 16, 21

*Hershman v. Muhlenberg Coll.*, 17 F. Supp. 3d 454 (E.D. Pa. 2014) .....................30

*Hudson v. Brandywine Hosp.*, No. CIV. A. 99-CV-4262,
    1999 WL 1240956 (E.D. Pa. Dec. 20, 1999)................................................27, 28

*Humphries v. Pennsylvania State Univ.*, 492 F. Supp. 3d 393
    (M.D. Pa. 2020) ...............................................................................................30

*Jennings v. Univ. of North Carolina*, 482 F.3d 686 (4th Cir. 2007) ......................14

*Jones v. Univ. of Detroit Mercy*, 527 F. Supp. 3d 945 (E.D. Mich. 2021)..............15

*Kling v. Univ. of Pittsburgh Med. Ctr.*, 2020 WL 2832008
    (W.D. Pa. May 8, 2020)....................................................................................30

*Lansberry v. Altoona Area School Dist.*, 318 F. Supp. 3d 739
    (W.D. Pa. 2018) ..........................................................................................passim

*Lum v. Bank of Am.*, 361 F.3d 217 (3d Cir. 2004)....................................................7

*M.S. by and through Hall v. Susquehanna Twp. Sch, Dist.*,
    969 F. 3d 120 (3d Cir. 2020) .......................................................................9, 21

*MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565 (W.D. Pa. 2019).......30

*Moeck v. Pleasant Valley Sch. Dist.*, 179 F. Supp. 3d 442 (M.D. Pa. 2016) ....15, 19

*Moore v. Temple Univ.*, No. 13-5079, 2016 WL 4061352
    (E.D. Pa. July 29, 2016)..............................................................................11, 12

*Oldham v. Pennsylvania State Univ.*, 2022 WL 1528305
    (M.D. Pa. May 13, 2022).............................................................22, 26, 28, 31

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998) ...........................14

iv

*Oshiver v. Fishbein, Sedran & Berman*, 38 F.3d 1380 (3d Cir. 1994)...................11

*In re. O.P. v. Scranton Sch. Dist.*, 2012 WL 37090 (M.D. Pa. 2012) ...................20

*Rotkiske v. Klemm*, 890 F.3d 422 (3d Cir. 2018)......................................................11

*S.K. v. North Allegheny School Dist.*, 168 F. Supp. 3d 786 (W.D. Pa. 2016)........21

*Schengrund v. Penn St. Univ.*, 705 F. Supp. 2d 425 (M.D. Pa. 2009)..............11, 12

*Summy-Long v. Pennsylvania State Univ.*, 226 F. Supp. 3d 371 (M.D. Pa. 2016),
   *aff'd*, 715 F. App'x 179 (3d Cir. 2017)................................................................11

*Swanger v. Warrior Run Sch. Dist.*, 346 F. Supp. 3d 689
   (M.D. Pa. 2018) .................................................................................8, 21, 23

*Trentadue v. Redmon*, 619 F. 3d 648 (7th Cir. 2010)...............................................20

*Walsh v. Univ. of Pittsburgh*, 2015 WL 128104 (W.D. Pa. Jan. 8, 2020)..............30

*Williams v. Associated Servs. for Blind*, No. Civ. A. 95-7871,
   1996 WL 222088 (E.D. Pa. Apr. 3, 1996)...........................................................27

**STATE CASES**

*Banyas v. Lower Bucks Hosp.*, 437 A.2d 1236 (Pa. Super. Ct. 1981)..............25, 26

*Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36 (Pa. Super. Ct. 2000).........29

*Britt v. Chestnut Hill Coll.*, 632 A.2d 557 (Pa. Super. Ct. 1993) ...........................27

*Butler v. Flo-Ron Vending Co.*, 557 A.2d 730 (Pa. Super. Ct. 1989) ....................31

*Costa v. Roxborough Mem. Hosp.*, 708 A.2d 490 (Pa. Super. Ct. 1998) ...............31

*Denton v. Silver Stream Nursing & Rehab. Ctr.*, 739 A.2d 571
   (Pa. Super. Ct. 1999)......................................................................................29, 31

*Hart v. O'Malley*, 647 A.2d 542 (Pa. Super. Ct. 1994), *aff'd*, 676 A.2d 222 (Pa.
   1996) ....................................................................................................................27

*Hoy v. Angelone*, 720 A.2d 745 (Pa. 1998) ......................................................25, 26

*Love v. Cramer*, 606 A.2d 1175 (Pa. Super. Ct. 1992)...........................................27

v

*Manley v. Fitzgerald*, 997 A.2d 1235 (Pa. Commw. Ct. 2010)..............................25

*Papieves v. Lawrence*, 263 A.2d 118 (Pa. 1970)................................................25, 26

*Swisher v. Pitz*, 868 A.2d 1228 (Pa. Super. Ct. 2005).............................................25

**FEDERAL STATUTES AND RULES**

20 U.S.C. § 1681(a) .........................................................................................13, 20

Federal Rule of Civil Procedure 12(b)(6) .................................................................7

Local Rule 7.8(a)................................................................................................passim

In 2021, Zara Moss successfully graduated from The Pennsylvania State University, having twice been a national runner-up in NCAA fencing competitions as a member of the University fencing team. Well after she had already graduated, Ms. Moss decided to sue the University and its head fencing coach, Wieslaw "Wes" Glon. The University has moved to dismiss Moss's Complaint in its entirety, and files this brief in support.

Moss's Title IX claim against the University (Count One), based on the University's alleged "deliberate indifference" to Glon's alleged harassment, must be dismissed for three reasons. ***First***, as will be detailed below, the majority of Moss's allegations are time-barred. ***Second***, even if the Court were to consider all of Moss's allegations, most do not concern sex- or gender-based claims of harassment.  The few allegations that facially allege sex-based harassment, when taken together, are neither severe nor pervasive enough to meet the pleading requirements of Title IX. ***Third***, even if the Court found that some of Moss's allegations constituted severe and pervasive sex-based harassment, and even if the Court determined that the University's response to Moss's first report of such conduct on March 17, 2021 constituted "deliberate indifference" (it did not), Moss still has not pled a viable Title IX claim because she fails to allege that she suffered *subsequent* harassment as a result of that deliberate indifference.

40148354.11

Moss's emotional distress claims (Count II) fare no better. Her claim for intentional infliction of emotional distress ("IIED") fails because the University's claimed conduct—failing to take her claims seriously and handle them in good faith—does not constitute "extreme and outrageous" conduct sufficient to support an IIED claim. Further, Moss has failed to allege that any emotional distress she experienced because of the *University's* conduct resulted in any physical injury to her, which further dooms her IIED claim. Moss's negligent infliction of emotional distress ("NIED") claim is equally flawed.  Moss has not pled a viable negligence claim against the University, and thereby has not pled an essential element of an NIED claim.

Finally, Moss attempts to hold the University vicariously liable for the emotional distress she claims to have experienced as a result of Glon's alleged sex-based harassment under a *respondeat superior* theory (Count III).  This claim is also unavailing.  Moss has failed to plead sufficient plausible facts indicating that the purported harassment was committed in furtherance of the University's mission.

The Court should dismiss Moss's Complaint against the University in its entirety.

40148354.11

## I.    PROCEDURAL HISTORY

Moss filed her Complaint on April 11, 2022. *See* Complaint ("Compl.") (Doc. 1). The Complaint purports to set forth three (3) causes of action against the University:

(1)    Count I – "Sexual harassment in Violation of Title IX 20 U.S.C. §1681, et seq. (Deliberate Indifference)" Compl. ¶¶ 41-46;

(2)    Count II – "Negligent and Intentional Infliction of Emotional Distress" Compl. ¶¶ 47-59; and

(3)    Count III – "Respondeat Superior" Compl. ¶¶ 60-63.

The University submits this brief in support of its Motion to Dismiss the Complaint, which Motion was timely filed on June 17, 2022. (Doc. 10).

## II.    STATEMENT OF ALLEGED FACTS[1]

### A.    Moss's fencing career at the University.

Moss started fencing at the University in 2017 during her freshman year of college. Compl. at ¶ 11. She asserts that Glon, her fencing coach, almost immediately "hounded her about her weight," *id.*, and, despite her "strong performance, [] took every opportunity to degrade and verbally abuse [her]" including by purportedly telling her "she was a waste of his time and valuable scholarship money" and criticizing "everything she did[.]" *Id.* at ¶ 12. Moss further

---

[1] While the University disagrees with and disputes many of the allegations set forth in the Complaint, the University acknowledges that the Court must accept any well-pleaded allegations in the Complaint as true for purposes of this motion. This Statement of Facts is therefore based on the factual allegations of and documents quoted from, characterized, or referenced in the Complaint.

40148354.11

alleges that Glon "singled out the women fencers" when he "screamed at them, telling them he regretted recruiting each of them." *Id.* at ¶ 13. Moss also claims that Glon "physically abused" her during her freshman year when, during a lesson, Glon allegedly "forced [Moss] to fence him without equipment." Compl. at ¶ 15.

In January 2019, Glon allegedly told Moss she was "being overly emotional and sensitive because she was on her period" and "prohibited" Moss "from seeking medical attention and forced her to train despite" an alleged concussion. *Id.* at ¶ 14. Moss claims that Glon's alleged abuse was "based on sex" and he "believed women fencers were weak and dramatic." Compl. at ¶ 17. As purported evidence of this latter point, Moss alleges that (on some unspecified day) Glon told her "she must have a bladder infection given how often she was using the restroom." *Id.*

Moss alleges that Glon "hurled" additional "sex-based criticisms at her, telling her, for example, that the reason she was 'not good anymore' was because she 'needed a boyfriend.'" *Id.* at ¶ 20. Moss also alleges that Glon forced her to compete and practice through injuries, but did not require the same of male fencers. *Id.* at ¶¶ 22-23. Moss further alleges that Glon "expected the women fencers to don perfect hair and makeup," "routinely and publicly demeaned and humiliated the women fencers for being on their periods," *id.* at ¶ 30, and that he required women fencers to sew and patch equipment "not only for themselves, but also for the male fencers" and "treated the men's captain as a true leader and

4

representative for the team" while, by contrast, requiring women fencers to "stock[] the snack table". *Id.* at ¶ 32.  Moss further alleges that "[d]uring press interviews, Zara and her fellow women teammates were often told to sit there and look pretty." *Id.*

Moss makes additional allegations that Glon commented on her weight throughout her time at the University. Compl. at ¶¶ 18, 24. She claims that Glon "never attacked the male fencers when they gained weight—just Zara and other women fencers." *Id.* at ¶ 24. Moss claims she developed an eating disorder and body dysmorphia because of Glon's "constant body shaming." *Id.* at ¶¶ 19, 24. Although Moss claims that her "fencing performance took a hit because of" Glon's conduct, she also alleges that her second year performance was the same as her first—she finished second in the NCAA national championships each year. *Id.* at ¶¶ 20, 21. Moss alleges that she did not participate in the national championships her third year (spring 2020) due to the COVID-19 pandemic. *Id.* at ¶ 23.

### B.    Moss's March 10, 2021 meeting with the University.

Moss alleges that she contacted Bob Boland, the University's Athletics Integrity Officer, on March 10, 2021 to schedule a meeting. *Id.* at ¶ 25. Moss claims she met with Mr. Boland on March 17, 2021 "and reported [Glon]'s abuse" including the alleged "verbal abuse towards the women fencers and the danger Wes placed them in when he forced them to compete while injured." *Id.* Moss

asserts that Boland told her he had received prior reports concerning Glon, but also told her to wait to schedule another meeting until after the NCAA national championships to avoid "'rocking the boat.'" *Id.*

Moss alleges that she met with Boland and others on April 7, 2021 and again "reported [Glon]'s misconduct[.]" Compl. at ¶ 26. Moss claims that Boland acknowledged her concerns and suggested further investigation was warranted, but ultimately dismissed her claims and she "never heard from Mr. Boland or Penn State again." *Id.*

Moss graduated from the University in 2021. Compl. ¶ 1. She filed the Complaint in this matter on April 11, 2022. *See* Compl.

## III.   STATEMENT OF QUESTIONS PRESENTED.

***Question One:***     Should this Court dismiss Count One of the Complaint (Title IX – Deliberate Indifference) for failure to state a claim upon which relief can be granted where: (1) the majority of the allegations concerning harassment are time-barred, (2) those allegations concerning harassment that are not time-barred do not concern sex-based harassment and those that do are insufficiently severe or pervasive to support a Title IX claim, and (3) Moss did not experience subsequent sex-based harassment as a result of the University's alleged deliberate indifference after she purportedly reported her allegations to Boland on March 17, 2021.

***Suggested Answer:***        Yes.

***Question Two:***     Should this Court dismiss Count Two of the Complaint (Negligent and Intentional Infliction of Emotional Distress) when Moss: (1) has failed to allege "extreme and outrageous" conduct or an associated physical injury with respect to the University's alleged conduct to support a claim for intentional infliction of emotional distress, and (2) has failed to allege that the University owed her a legal duty to support her claim for negligent infliction of emotional distress?

40148354.11

*Suggested Answer:*        *Yes.*

*Question Three:*   Should this Court dismiss Count Three of the Complaint (Respondeat Superior) because Moss has failed to plead factual allegations sufficient to show that Glon's alleged sex-based discrimination occurred within the scope of his employment?

*Suggested Answer:*        *Yes.*

## IV.   ARGUMENT.

### A. Applicable legal standard.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint that on its face is insufficient to state a claim upon which relief can be granted. *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a motion to dismiss. *Iqbal*, 556 U.S. at 678. The United States Court of Appeals for the Third Circuit has further explained that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must take note of the elements the plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, when there are well-pleaded factual

7

allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief.

*Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotation and citation omitted).

> **B.      The Court should dismiss Moss's Title IX claim (Count I) because the claim is primarily based on alleged conduct that is not actionable under the applicable statute of limitations and the remaining allegations (1) do not rise to the level of either severe or pervasive sex-based harassment and (2) do not demonstrate how Moss was denied any educational benefit or opportunity.**

In Count I, Moss claims that she was subjected to "harassment based on [her] sex" in the form of criticisms regarding her weight, being "inappropriately told [] she had a bladder infection," and being required to train while injured. Compl. ¶¶ 43-45. She further alleges that Glon made a remark about her period on one occasion, *id.* at ¶ 14, and infers that Glon called her "lazy" and "weak" because she was a woman. *Id.* at ¶ 534.

In a case with claims like this one, "to proceed on a claim against an educational institution under Title IX, the student must establish that the institution was 'deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.'" *Swanger v. Warrior Run Sch. Dist.*, 346 F. Supp. 3d 689, 704 (M.D. Pa. 2018) (quoting *Davis Next Friend LaShonda D. v. Monroe Cnty.*

*Bd. of Educ.*, 526 U.S. 629, 650 (1999)); *see also Hall v. Millersville Univ.*, 22 F. 4th 397, 408 (3d Cir. 2022); *M.S. by and through Hall v. Susquehanna Twp. Sch, Dist.*, 969 F. 3d 120, 125 (3d Cir. 2020) ("[T]o be liable under Title IX's private right of action, an appropriate person must have actual knowledge of sex-based harassment and must respond with deliberate indifference.").

Here, Moss has failed to allege a plausible Title IX "deliberate indifference" claim for at least three reasons. ***First***, the bulk of her allegations relate to conduct that is not actionable under the applicable statute of limitations. ***Second***, even if the alleged conduct was timely, the alleged harassment was either not "sex-based" or was not "severe or pervasive." ***Third***, the Complaint does not allege that Moss experienced sex-based harassment after March 17, 2021—the date on which she allegedly put the University on "actual notice" of the harassment.

### 1. Count I must be dismissed to the extent it relies on allegations of conduct occurring prior to April 11, 2020.

A two-year statute of limitations applies to an action to recover damages under Title IX. *Bougher v. Univ. of Pittsburgh,* 882 F. 2d 74, 77–78 (3d Cir. 1989) ("the most analogous statute of limitations [for a Title IX claim] is Pennsylvania's two-year statute of limitations period applicable to personal injury actions. . . ."); *cf. Kasteleba,* 325 F. App'x. at 156 (federal courts apply the forum state's personal injury statute of limitations claims to § 1983 claims).

Here, despite filing her Complaint on April 11, 2022, the majority of Moss's claims are based on conduct that she alleges occurred in 2017, 2018, 2019, and the early part of 2020. *See, e.g.,* Compl. at ¶ 11 (October 2017); ¶ 14 (January 2018); ¶ 19 (March 2019); ¶ 23 (early 2020). Thus, the statute of limitations bars Moss's Title IX claim to the extent it is based on alleged conduct that occurred prior to April 11, 2020. *See Cain v. Dep't of Pub. Welfare, Office of Secretary Reconsideration Unit*, 442 Fed. App'x 638, 638 (3d Cir. 2011) (citing Fed. R. Civ. P. 8(c)) (per curiam) (noting that while the statute of limitations is typically an affirmative defense, where it is obvious from the face of the complaint that relief is barred by the applicable statute of limitations, a court may dismiss a time-barred complaint).

In an attempt to circumvent the statute of limitations, and plainly aware that this poses a problem for her claims, Moss alleges in her Complaint that Glon's alleged conduct "was part of a continuing practice, so all his conduct throughout [Moss's] tenure at Penn State (2017-2021) falls within the applicable statute of violations under Pennsylvania's continuing violation theory." Compl. at ¶ 35. (citations omitted). However, courts in this circuit that have been asked to apply the continuing violations doctrine to Title IX claims—including this Court—have declined to do so. *See, e.g., Chinoy v. Pennsylvania State Univ.*, No. 11-CV-01263,

2012 WL 727965, at *6 (M.D. Pa. Mar. 6, 2012)[2] (declining to apply continuing

violation doctrine to Title IX claims); *Gjeka v. Del. Cnty. Cmty. Coll.*, No. 12-

4548, 2013 WL 2257727, at *4-5 (E.D. Pa. May 23, 2013) (same); *accord Moore

v. Temple Univ.*, No. 13-5079, 2016 WL 4061352, at *7 n.2 (E.D. Pa. July 29,

2016)[3] ("The continuing violations theory is not applicable here. With respect to

the Title IX claims against Temple, the theory has not been extended to such

claims."), *aff'd*, 674 F. App'x 239 (3d Cir. 2017).

None of the cases that Moss cites help her cause. The first cited case,

*Oshiver v. Fishbein, Sedran & Berman*, 38 F.3d 1380, 1386 (3d Cir. 1994), does

not concern the continuing violations theory at all. Instead, *Oshiver* deals with the

discovery rule and equitable tolling—two entirely different concepts. 38 F.3d at

1386-87. Beyond this, *Oshiver* is bad law: it was overruled by the Third Circuit in

2018. *See Rotkiske v. Klemm*, 890 F.3d 422, 428 (3d Cir. 2018).

Moss's citations to *Schengrund v. Penn St. Univ.*, 705 F. Supp. 2d 425, 433

(M.D. Pa. 2009) and *Summy-Long v. Pennsylvania State Univ.*, 226 F. Supp. 3d

371, 411 (M.D. Pa. 2016), *aff'd*, 715 F. App'x 179 (3d Cir. 2017) are similarly

unavailing. In referencing these decisions, Moss suggests that the Court should

---

[2] A copy of this unpublished decision is attached as Attachment "A" pursuant to Local Rule 7.8(a).

[3] A copy of this unpublished decision is attached as Attachment "B" pursuant to Local Rule 7.8(a).

40148354.11

extend the continuing violations theory sometimes articulated in Title VII cases to a Title IX claim. While courts do sometimes apply Title VII jurisprudence in the Title IX context, courts in the Third Circuit have not drawn these parallels when it comes to the continuing violations theory.[4] *See Chinoy*, 2012 WL 727965, at *6; *Moore*, 2016 WL 4061352, at *7 n. 2. Moreover, in *Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 566 (3d Cir. 2017), the Third Circuit specifically left for another day the question of whether the continuing violations doctrine would apply to Title IX claims.

This Court should follow the other district courts in the Third Circuit, and in other circuits, that have held that the continuing violations doctrine does not apply to Title IX claims. *Chinoy*, 2012 WL 727965, at *6; *Moore*, 2016 WL 4061352, at *7 n. 2; *Folkes v. New York Coll. of Osteo. Med. of New York Inst. of Tech.*, 214 F. Supp. 2d 273, 288-89 (E.D.N.Y. 2002) (noting that continuing tort exception "may well be a poor fit with the goals of Title IX."); *Haley v. Clarksville-Montgomery Cnty. Sch. Sys.*, 353 F. Supp. 3d 724, 734-35 (M.D. Tenn. 2018) ("[C]ourts in this circuit and elsewhere have concluded that the [continuing violations] doctrine indeed does not apply in Title IX cases. . . . This Court agrees.").

As the continuing violations exception does not apply to Title IX claims, the Court should only consider those allegations related to conduct occurring on or

---

[4] In *Schengrund* this Court held that each allegedly discriminatory act (in that case, paychecks) was a new, rather than continuing, violation. 705 F. Supp. at 439-440.

40148354.11

after April 11, 2020 in determining whether Moss has asserted a cognizable Title

IX claim. The Court should not consider the allegations set forth in paragraphs 11

to 24 of the Complaint, which all relate to alleged conduct that occurred prior to

April 11, 2020.

> **2.      Moss fails to state a Title IX claim for deliberate indifference because the bulk of her allegations do not concern sex-based discrimination—and those that arguably do concern sex-based discrimination are insufficient to qualify as severe and pervasive under Title IX.**

Title IX provides, in relevant part, that "[n]o person … shall, ***on the basis of***

***sex***, be excluded from participation in, be denied the benefits of, or be subjected to

discrimination under any education program or activity receiving Federal financial

assistance." 20 U.S.C. § 1681(a) (emphasis added). It is axiomatic, then, that Title

IX protects only against sex- or gender-based discrimination. *See, e.g.*, *Lansberry*

*v. Altoona Area School Dist.*, 318 F. Supp. 3d 739, 749 (W.D. Pa. 2018) (holding

that "intense, persistent, and malicious bullying" was not sexual harassment

because "sexual harassment requires a component directly related to one's

gender.").

The majority of Moss's allegations are not "directly related to" her sex or

gender. And, the few allegations that do facially relate to gender are neither severe

nor pervasive enough to support a Title IX claim, as discussed below.

40148354.11

        a.   *The majority of Moss's allegations are time-barred but, even if they were not, they do not concern sex-based harassment.*

Stated plainly, the majority of Moss's allegations do not concern sex- or gender-based harassment. Instead, as in *Lansberry*, 318 F. Supp. 3d at 749, or *Chisholm*, 947 F.3d at 352, Moss's claims are grounded more in claims of coach-type bullying or misguided attempts to motivate. Allegations such as these are not actionable under Title IX when they do not implicate sex- or gender-based harassment.

"Title IX is not a civility code for the male coach who coaches women, and it is not meant to punish such a coach for off-color language that is not aimed to degrade or intimidate." *Jennings v. Univ. of North Carolina*, 482 F.3d 686, 698 (4th Cir. 2007). The use of an offensive or gendered term, in and of itself, does not constitute sex-based discrimination. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (plaintiff "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted '*discrimina[tion] … because of … sex.*") (emphasis in original).  In other words, when a coach's comments are about "toughness" or fitness for playing a sport generally, rather than "gender roles," the comments are not sex-based. *Chisholm v. St. Marys City Sch. Dist. Bd. of Ed.*, 947 F. 3d 342, 352 (6th Cir. 2020). Thus, for example, where a coach criticized male players using gendered and offensive

14

language on a daily basis "in a crude, foul-mouthed way because they, in his view were not 'tough' enough," such comments were not evidence of sex-based discrimination. *Chisholm*, 947 F. 3d at 347, 352; *see also Moeck v. Pleasant Valley Sch. Dist.*, 179 F. Supp. 3d 442, 447 (M.D. Pa. 2016) (noting that vulgarity and "sporadic incidents are not sufficiently pervasive to establish a sexual harassment claim); *Jones v. Univ. of Detroit Mercy*, 527 F. Supp. 3d 945, 950 (E.D. Mich. 2021) (coach's "'locker room talk'" while "crude and inappropriate" was not "severe, pervasive, and objectively offensive" under Title IX) (citation and quotation omitted).

Here, Moss alleges that Glon "believed women athletes were simply not tough enough" and called them "weak" and "lazy." Compl. at ¶ 33. But, as the Sixth Circuit aptly observed: "[t]oughness, while sometimes celebrated in men, is certainly not discouraged in women, especially in a professional or team setting." *Id.* The Sixth Circuit further noted that the coach's abusive language in *Chisholm* "targeted a fundamental requirement for football players—toughness." *Id.* Certainly in fencing—like football—toughness is not simply a desirable trait: it is a prerequisite. Challenging a student-athlete's toughness may be a debatable coaching tactic, but it has nothing to do with sex or gender.

Moss also alleges that Glon disciplined male and female fencers differently. *Id.* at ¶ 31. She alleges that if a female fencer "had a minor infraction", Glon would

40148354.11

"publicly shame them" or "strip[] them of their leadership titles" but that he would overlook worse infractions committed by male fencers. *Id.* But, like so many of Moss's other allegations, she does not plead facts to support her desired conclusion.[5] Notably, Moss does not allege that Glon ever "publicly shamed" <u>her</u> for a minor infraction or took any leadership role away from her because of her sex.

Moss also alleges that Glon told "her she was a waste of his time and valuable scholarship money" and that he "routinely told her she was worthless and a waste of scholarship money". Compl. at ¶¶ 12, 54.  Such purported statements are akin to those in *Chisholm* where a coach stated "it was impossible to win with players who wasted their talents" like the plaintiff: they may be mean, or debatable motivational statements, but they in no plausible way indicate sex-based harassment sufficient to sustain a claim under Title IX. 947 F. 3d at 347.

The Complaint continues in the same vein. Moss claims that Glon's purported "abuse was particularly demeaning and humiliating because it was based on . . . sex", but supports this by alleging that Glon "told [Moss] she must have a

---

[5] Even if Moss had pled sufficient facts concerning alleged harassment of other fencers, she lacks standing to assert those claims. A Title IX deliberate indifference claim turns on whether alleged sex-based harassment experienced *by the plaintiff* was severe and pervasive—not whether alleged harassment experienced by *others* meets that standard. *See, e.g.*, *Hall*, 22 F. 4th at 411. Moss cannot vicariously assert others' experiences as support for her own claims.

40148354.11

bladder infection given how often she was using the restroom." Compl. at ¶ 17. Nothing about this comment is based on sex or gender. *See, e.g. Dorley v. South Fayette Tp. School Dist.*, 129 F. Supp. 3d 220, 236 (W.D. Pa. 2015) ("[W]here one factual assertion negates an essential element of a contrary assertion, that conflict cannot stand, absent sufficient explanation[.]"). Similarly, Moss's allegation that Glon forced her to "fence him without equipment," Compl. at 15, is not tethered to any factual allegation that Glon did not permit her to use protective gear *because of Moss's sex. Id.*

In short: Moss's allegations concerning conduct that occurred prior to April 11, 2020 are untimely and the Court should not consider them in assessing the viability of Moss's Title IX claim. Even if those allegations were actionable, they do not support a claim of sex- or gender-based harassment because, as detailed above, most of those allegations do not detail harassment directly related to sex or gender. What Moss describes are, at most, actions allegedly taken by Glon to "humiliate, ridicule, and intimidate" her. Compl. at ¶ 43. But humiliation, ridicule, intimidation, and bullying are not *de facto* sex-based discrimination. *Lansberry*, 318 F. Supp. 3d at 749.

       b.    *The few allegations that could arguably constitute sex-based conduct do not qualify as severe and pervasive harassment.*

Title IX does not protect against all sex-based discrimination. Instead, it protects only against sex-based discrimination that is "so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Davis*, 526 U.S. at 633. As the Sixth Circuit noted in *Chisholm*, in the realm of athletics "where emotions and adrenaline can run high, it is not unheard of for coaches and players alike to use offensive or gendered language, especially in the heat of a game." 947 F. 3d at 352-53. Thus, while some coaches may engage in conduct that is "less than laudable," such conduct will "not meet the high bar for severe, pervasive, and objectively offensive conduct." *Id.* (citation omitted).

Here, when only allegations from April 11, 2020 and onward are considered, there are no pled facts to support a claim of "severe" or "pervasive" sexual harassment. The only allegations during the relevant period are that Glon called Moss "lazy" and a "disappointment" for not fencing through an injury while permitting a male fencer to rest when he had "the same injury," and Glon's alleged continuing criticism of Moss's "physical appearance and weight." Compl. at ¶¶ 22, 24. Even if these allegations could be construed as sex-based—which is questionable—courts in the Third Circuit have held that

18

"sporadic and isolated incidents of sexual harassment fail to give rise to a Title IX claim." *Lansberry*, 318 F. Supp. 3d at 752 (citations omitted).

Moreover, even when *all* of Moss's allegations are considered (*i.e.*, even those that should be time-barred), taken together they are not severe or pervasive enough to support a claim under Title IX. *See Moeck*, 179 F. Supp. 3d at 447-48. First, as detailed, the majority of the interactions with Coach Glon described by Moss are not sex-based at all. Second, the handful of allegations that could be construed as sex- or gender-based relate to sporadic verbal comments. Third, in assessing the severity of the alleged sex-based harassment, a court must consider whether there was any physical contact. *Moeck*, 179 F. Supp. 3d at 448 ("In this case, plaintiff alleges no physical contact or propositioning for sex."). Here, Moss has failed to allege a single instance of sex-based physical contact. Fourth, even when read together, Moss's allegations concerning sex-based harassment, as pled, are too isolated and attenuated to constitute "pervasive" sex-based harassment. *See, e.g.*, *id.* at 447-48 (fewer than ten "sexually-tinged" comments over the course of two or three years "not sufficiently pervasive to establish a sexual harassment claim.").

Finally, the Complaint alleges that the sex-based harassment was severe, pervasive, and objectively offensive enough that it "effectively barred [Moss's] access to the educational opportunity her fencing scholarship provided[.]" Compl.

at ¶ 34. This conclusory allegation is unsupported by any well-pleaded facts.[6] Indeed, it is inferable from other allegations in the Complaint that Moss made full use of her scholarship, earned a degree from Penn State, and graduated as one of the University's most successful and highly decorated fencers. *See* Compl. at ¶ 21 (Moss finished second in consecutive national championships). Where a plaintiff fails to plead facts to show *how* she was allegedly denied educational benefits, she has failed to state a Title IX claim. *See, e.g.*, *Davis*, 526 U.S. at 653-54.

Moss has not alleged that her grades suffered, that she quit fencing, or left the University, or that Glon's alleged misconduct had any other impact on her educational experience. *See, e.g.*, *Price ex re. O.P. v. Scranton Sch. Dist.*, 2012 WL 37090, at *6 (M.D. Pa. 2012);[7] *see also, e.g.*, *Trentadue v. Redmon*, 619 F. 3d 648, 654 (7th Cir. 2010) (plaintiff unable to demonstrate she was denied equal access to education as a result of her harassment because her "grades did not suffer, she was not extensively absent from school, she graduated with a class rank of 27 out of over 500, and thereafter enrolled in college"). There simply is

---

[6] Moss's allegation that Glon's alleged abuse was "so severe she had to forego competing internationally" is insufficient. Compl. at ¶ 22. Title IX is concerned only with access to "educational" benefits and opportunities "provided by the school." 20 U.S.C. § 1681(a); *Davis*, 526 U.S. at 650. Moss has not alleged facts showing that the international competitions she ceased competing in were "educational opportunities or benefits provided by" the University.

[7] A copy of this unpublished decision is attached as Attachment "C" pursuant to Local Rule 7.8(a).

insufficient factual support for Moss's conclusion that she was "effectively barred" from the "educational opportunity her fencing scholarship provided." Compl. at ¶ 34.

> **3.** **Moss fails to plausibly plead a Title IX deliberate indifference claim because the University lacked actual knowledge of the alleged discrimination until March 10, 2021, and the Complaint does not allege that Moss was subjected to further harassment after that date.**

Actual notice means more than simply a report of inappropriate conduct. *Swanger*, 346 F. Supp. 3d at 705. A Title IX funding recipient has actual notice when it "'knows the underlying facts, indicating sufficiently substantial danger to students, and was therefore aware of the danger.'" *Hall*, 22 F. 4th at 410 (quoting *Bostic v. Smyrna Sch. Dist.*, 418 F.3d 355, 361 (3d Cir. 2005)). "Such knowledge will be deemed to be present where the victim of the harassment reported to the events to an 'appropriate person' who is, at a minimum, 'an official of the recipient entity with authority to take corrective action to end the discrimination.'"[8] *S.K. v. North Allegheny School Dist.*, 168 F. Supp. 3d 786, 800-01 (W.D. Pa. 2016) (quoting *Gebser v. Lago Ind. Sch. Dist.*, 524 U.S. 274, 290 (1998)); *Lansberry*, 318

---

[8] Notice to the alleged harasser (even one with authority to address harassment) is insufficient because the alleged harasser is not an "appropriate person" to correct the harassment he or she is allegedly perpetrating. *Hall*, 969 F.3d at 126 ("We hold that a perpetrator of sexual harassment who has authority to remedy Title IX violations is not an appropriate person for assessing a school district's Title IX liability in a private right of action.").

40148354.11

F. Supp. 3d at 750 ("To state a Title IX claim, 'the plaintiff must present evidence that she provided actual notice [of the sexual harassment] to an appropriate official at the school.'") (quoting *Moeck v. Pleasant Valley Sch. Dist.*, 179 F. Supp. 3d 442, 449 (M.D. Pa. 2016)).

Here, Moss alleges that she reached out to Bob Boland, the University's Athletics Integrity Officer, on March 10, 2021 to schedule a meeting. Compl. at ¶ 25. Moss then alleges that she met with Boland on March 17, 2021 "and reported [Glon's] abuse." *Id.* Taking these allegations as true, the earliest that the University would have had "actual notice" of Moss's claims was on March 17, 2021.[9]

Moss next alleges that Boland advised her to "wait" to avoid "rocking the boat" before the NCAA fencing championships. Compl. at ¶ 26. Moss then contends that she had another meeting with Boland on April 7, 2021, along with other University officials. *Id.* She claims that Boland told her that Glon's actions "could support a Title IX claim and warranted further investigation" but that after

---

[9] In a transparent attempt to link her case to another (now dismissed) case, Moss discusses entirely distinct claims brought by Jennifer Oldham, a private fencing coach unaffiliated with the University. This is irrelevant to the "actual knowledge" inquiry in *this* lawsuit, which focuses on whether an "appropriate person was personally aware of facts demonstrating a real danger to his or her student body." *B.W. v. Career Tech. Ctr. of Lackawanna Cty.*, 422 F. Supp. 3d 859, 880 (M.D. Pa. 2019) (citation omitted). Moreover, as this Court has previously ruled, Jennifer Oldham had no connection with the University. *See Oldham v. Pennsylvania State Univ.*, 2022 WL 1528305, at *19 (M.D. Pa. May 13, 2022). In sum, Moss's allegations concerning Ms. Oldham cannot suffice to meet the "actual knowledge" requirement for Moss's case.

40148354.11

the April 7, 2021 meeting she "never heard from Mr. Boland or [the University] again." *Id.*

Even if the University's response to Moss's complaints at those meetings constituted "deliberate indifference"—which the University disputes—that is not enough. For a plausible claim to proceed, "[t]he Title IX funding recipient's deliberate indifference must subject the students to further harassment, to wit, the indifference must 'cause students to undergo harassment or make them liable or vulnerable to it.'" *Swanger*, 346 F. Supp. 3d at 705 (quoting *Davis*, 526 U.S. at 644-45)). In other words, deliberate indifference without any subsequent harm is not enough.

Here, the Complaint does not allege that Moss was subjected to further harassment from Glon (or anyone else) after either the March 17 or April 7, 2021 meeting. In fact, it seems likely, per Moss's own pleading, that she graduated and left the University shortly after these meetings. This deficiency also mandates dismissal of Moss's Title IX claim grounded in deliberate indifference. *Cunning v. West Chester Univ.*, 2021 WL 765729, at *3-4 (E.D. Pa. Feb. 25, 2021) (granting motion to dismiss Title IX deliberate indifference claim where plaintiff "has not

plausibly alleged that the [university's] deliberate indifference ... caused her to be subjected to additional acts of harassment[.]").[10]

**C. Count II ("Negligent and Intentional Infliction of Emotional Distress") and Count III (Respondeat Superior) must be dismissed because (1) the University's conduct was not "extreme and outrageous" and Moss has failed to plead facts suggesting she experienced "severe" emotional distress; (2) Moss has failed to plead a claim for negligence; and (3) Moss has failed to plead sufficient facts to show that Glon's alleged actions were committed in the scope of his employment.**

Moss has asserted a hybrid claim for both intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED"). The IIED claim must be dismissed because the University's purported conduct in allegedly improperly handling Moss's Title IX claim does not qualify as "extreme and outrageous" conduct as a matter of law, and Moss has failed to plausibly allege that she experienced a "physical injury" as a result of the University's alleged conduct. The NIED claim must be dismissed because Moss has failed to prove the elements of a negligence claim. Finally, while Moss claims (in a separate "Count III") that the University is vicariously liable for Glon's alleged conduct, she has failed to plead facts that support a reasonable inference that Glon was acting in furtherance of the University's mission.

---

[10] A copy of this unpublished decision is attached as Attachment "D" pursuant to Local Rule 7.8(a).

1.    **The IIED claim must be dismissed because Moss has not pled: (a) "extreme and outrageous" conduct or (b) "severe" emotional distress and a resulting longstanding or chronic physical injury.**

   a.    *Moss has not alleged "extreme and outrageous" conduct by the University.*

Moss's IIED claim must be dismissed because she does not allege any "extreme and outrageous" conduct on the part of the University. *Manley v. Fitzgerald*, 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010). A court must determine whether the alleged conduct, as pleaded, rises to the level of "extreme and outrageous" as a threshold issue. *Swisher v. Pitz*, 868 A.2d 1228, 1231 (Pa. Super. Ct. 2005).

Conduct is "extreme and outrageous" when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society[.]" *Hoy v. Angelone*, 720 A.2d 745, 753-54 (Pa. 1998) (citation and quotation omitted). Consequently, only cases asserting "the most egregious conduct" imaginable in society meet the "extreme and outrageous" standard. *See Papieves v. Lawrence*, 263 A.2d 118, 121-22 (Pa. 1970) (striking and killing plaintiff's son with car, failed to notify authorities, buried body in field); *Banyas v. Lower Bucks Hosp.*, 437 A.2d 1236, 1239 (Pa. Super. Ct. 1981) (intentional fabrication of medical records to suggest plaintiff had killed third-party, leading to indictment for

homicide). Courts routinely hold that "sexual harassment alone does not rise to the level of outrageousness necessary to make out a cause of action for intentional infliction of emotional distress." *Hoy*, 720 A.2d at 754 (citation and quotation omitted).

The University's conduct, as alleged in the Complaint, does not rise to the level necessary to qualify as "extreme and outrageous." Moss's IIED/NIED claim focuses on the University's alleged "actions and/or omissions" with respect to its alleged duty "to act in good faith and take [Plaintiff's] reports against Glon seriously." Compl. at ¶ 51. It is apparent, though, that failing to take a student athlete's claim about coaching misconduct seriously is hardly the same as killing someone's child, *Papieves*, 263 A.2d 118, 121-22, or, for example, framing someone for homicide, *Banyas*, 437 A.2d 1236, 1239. Indeed, in *Oldham v. Pennsylvania State University*, this Court held that the University's alleged failure to properly handle a plaintiff's reports of coaching misconduct was not "'so outrageous,' so 'atrocious,' so 'utterly intolerable' as to support a claim for IIED." 2022 WL 1528305, at *16, *28.[11] So too here. Moss' IIED claim must be dismissed for this reason, alone.

---

[11] A copy of this unpublished decision is attached as Attachment "E" pursuant to Local Rule 7.8(a).

40148354.11

   b. *Moss has not alleged "severe" emotional distress and a longstanding or chronic physical impact sufficient to support an IIED claim.*

An IIED claim is also subject to dismissal when a complaint fails to allege that a defendant's "extreme and outrageous" conduct caused the plaintiff to seek medical treatment to address the allegedly resulting severe emotional distress. *Britt v. Chestnut Hill Coll.*, 632 A.2d 557, 562 (Pa. Super. Ct. 1993) (dismissing IIED claim when plaintiff failed to allege conduct caused him to seek medical treatment); *Hart v. O'Malley*, 647 A.2d 542, 553-54 (Pa. Super. Ct. 1994), *aff'd*, 676 A.2d 222 (Pa. 1996). By contrast, "[t]emporary conditions such as fright, nervous shock, nausea, grief, rage, and humiliation, even when accompanied by physical symptoms, do not constitute compensable injuries because such conditions do not amount to substantial bodily harm." *Hudson v. Brandywine Hosp.*, No. CIV. A. 99-CV-4262, 1999 WL 1240956, at *3 (E.D. Pa. Dec. 20, 1999).[12] Instead, a plaintiff pleading an IIED claim must allege long continued or chronic conditions. *Love v. Cramer*, 606 A.2d 1175, 1179 (Pa. Super. Ct. 1992) ("[A]ppellant has alleged that her injuries were of a **continuing nature** and have required her to obtain psychological treatment.") (emphasis added); *Williams v. Associated Servs. for Blind*, No. Civ. A. 95-7871, 1996 WL 222088, at *1 (E.D.

---

[12] A copy of this unpublished decision is attached as Attachment "F" pursuant to Local Rule 7.8(a).

Pa. Apr. 3, 1996)[13] (allegations of "crying, anxiety, sleep loss, [and] transient hypertension" were insufficient).

To meet the IIED pleading threshold, then, a "plaintiff must allege facts indicating how [s]he will confirm his alleged emotional distress with competent medical evidence …." *Buttermore v. Loans*, No. CV 15-1514, 2016 WL 308875, at *9 (W.D. Pa. Jan. 25, 2016);[14] *Ghrist v. CBS Broad., Inc.*, 40 F. Supp. 3d 623, 631 (W.D. Pa. 2014) ("[n]owhere in the Plaintiff's Amended Complaint is there any allegation of physical injury or harm to him as a result of the Defendant's conduct, let alone any allusion to competent medical evidence of the same").

Here, Moss's allegations fall short. She alleges she has "an eating disorder and body dysmorphia" and experienced "severe panic and anxiety symptoms, insomnia, nightmares, and PTSD." Compl. at ¶ 57. These are the same sort of allegations of generalized anxiety and mental conditions unaccompanied by any physical injury and the need for professional medical treatment that courts routinely reject as the basis for an IIED claim. *Hudson*, No. CIV. A. 99-CV-4262, 1999 WL 1240956, at *3; *see also Oldham*, 2022 WL 1528305, at *28 (holding that allegations of  "stress, anxiety, 'loss of sleep,' an 'inability to perform work

---

[13] A copy of this unpublished decision is attached as Attachment "G" pursuant to Local Rule 7.8(a).

[14] A copy of this unpublished decision is attached as Attachment "H" pursuant to Local Rule 7.8(a).

tasks,' and 'feelings of depression, despair, and humiliation'" were unconnected to any physical injury).

Finally, the Complaint is devoid of any facts that plausibly suggest that *the University*'s alleged conduct in handling Moss's Title IX claims caused her to suffer any emotional distress—let alone corresponding physical harm. *See, e.g.*, Compl. at ¶ 57 (focusing solely on Glon's "verbal and psychological torment" and Glon's "constant emotional abuse" and Glon's "conduct").

Moss's IIED claim against the University should be dismissed.

### 2. Moss's NIED claim should be dismissed because she has failed to plausibly allege that the University owed her a duty.

In Pennsylvania, "[t]he crux of a [NIED] claim is that [defendants] breached some duty they owed to [plaintiff] and that the breach injured [her]." *Denton v. Silver Stream Nursing & Rehab. Ctr.*, 739 A.2d 571, 578 (Pa. Super. Ct. 1999). Thus, to succeed on a NIED claim, a plaintiff must establish a prima facie case of negligence. *See Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 45 (Pa. Super. Ct. 2000)("[A]bsent a finding of negligence, the negligent infliction of emotional distress claim cannot survive.").

Here, Moss's Complaint fails to identify any cognizable "duty" that the University allegedly owed to her with respect to the allegations set forth in the Complaint. While Moss claims that the University' owed her a duty "to act in good faith and take her reports against Glon seriously," Compl. at ¶ 51, this is not a duty

29

recognized by the courts. Moss's failure to articulate any legally cognizable duty is fatal to her NIED claim.

As this Court has previously ruled, "Pennsylvania law does not recognize a special relationship between colleges and student-athletes that would impose a duty of care." *Humphries v. Pennsylvania State Univ.*, 492 F. Supp. 3d 393, 407 (M.D. Pa. 2020) (Brann, J.). Indeed, this rule of law applies to all students, not just student-athletes. *See MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565, 594 (W.D. Pa. 2019) ("absent special circumstances … the Pennsylvania courts would not extend liability for the NIED tort to a case involving a relationship between a school and its student"); *Hershman v. Muhlenberg Coll.*, 17 F. Supp. 3d 454, 460 (E.D. Pa. 2014) (granting motion to dismiss student's NIED claim against college due to lack of special relationship); *Kling v. Univ. of Pittsburgh Med. Ctr.*, 2020 WL 2832008, at *4 (W.D. Pa. May 8, 2020)[15] (same); *Walsh v. Univ. of Pittsburgh*, 2015 WL 128104, at *15 (W.D. Pa. Jan. 8, 2020)[16] (agreeing that "the relationship between a college and its students" does not support NIED claim).

---

[15] A copy of this unpublished decision is attached as Attachment "I" pursuant to Local Rule 7.8(a).

[16] A copy of this unpublished decision is attached as Attachment "J" pursuant to Local Rule 7.8(a).

40148354.11

In the absence of any legally cognizable duty, Moss's NIED claim must be dismissed. *Denton*, 739 A.2d at 578; *see also Oldham*, 2022 WL 1528305, at *28 (dismissing NIED claim due to lack of duty).

> **3. The University is not vicariously liable for Glon's alleged actions because Moss has failed to allege sufficient facts that plausibly show that Glon's alleged actions were in furtherance of the University's mission.**

Count III of the Complaint alleges that the University is vicariously liable for Glon's alleged sex-based harassment and resulting emotional distress under the doctrine of respondeat superior. Compl. at ¶¶ 60-63. Under Pennsylvania law, an employer can be held liable for the torts of its employee only when the employee's conduct falls within the scope of employment. *Chuy v. Phila. Eagles Football Club*, 595 F. 2d 1265, 1276 (3d Cir. 1979). This applies to both intentional and negligent conduct. *Costa v. Roxborough Mem. Hosp.*, 708 A.2d 490, 493 (Pa. Super. Ct. 1998) (citation omitted). An employee's conduct does **not** fall within the scope of employment if it is "different in kind from that authorized" or "too little actuated by a purpose to serve the [employer]." *Butler v. Flo-Ron Vending Co.*, 557 A.2d 730, 736 (Pa. Super. Ct. 1989) (citation and quotation omitted). "If the facts fail to support a reasonable inference that the employee was acting in furtherance of his employer's business, the [employee's] conduct falls outside the scope of his employment as a matter of law." *Bissett v. Verizon Wireless*, 401 F. Supp. 3d 487, 493 (M.D. Pa. 2019) (citation and quotation omitted).

40148354.11

Here, Moss's conclusory allegations are insufficient to support her assertion of vicarious liability against the University. Moss first asserts that "Defendants' actions and/or omissions were in furtherance of Penn State's financial interests and driven by Penn State placing money and prestige over the safety of its student athletes." Compl. at ¶ 50. But there are no facts pled to support this conclusion. Moss then claims that Glon's conduct was "committed in the scope of his employment for Penn State" because he utilized "cruel tactics as a method of coaching and with the perverse incentive to maintain Penn State's prestige in the fencing community and bring home wins for the University, which in turn, allowed the University to recruit talent." *Id.* at ¶ 55. This allegation is not only unsupported by facts, it is facially illogical.  There is no plausible way that discrimination against female student-athletes could better allow the University to recruit other female student-athletes.

Moss similarly claims that Glon "strove to get results for [the University] at all costs." *Id.* at ¶ 62. This conclusory and speculative allegation once again is unsupported by any concrete facts. Further, Moss's allegations again contradict themselves.  Moss contends that Glon's purported harassment was caused by a desire to "get results for Penn State at all costs[,]" Compl. at ¶ 62, while concurrently noting that her "fencing performance took a hit because of [Glon]'s conduct[,]" Compl. at ¶ 20, and she would miss practice by "escaping to the

bathroom" to avoid Glon. *Id.* at ¶ 17. In other words, the specific facts pled by Moss indicate that these purported tactics did *not* get results and did *not* lead to wins.   Instead, if Moss's own statements are to be believed, Glon's actions sidelined one of the University's most talented fencers.

In any event, suffice to say that Glon was not employed by the University to discriminate against female student-athletes or otherwise diminish the abilities of the student-athletes he coached, and Plaintiff could not and does not plausibly plead facts to the contrary. *See Doe v. McDonald's USA, LLC*, 504 F. Supp. 3d 360, 365 (E.D. Pa. 2020) (granting motion to dismiss IIED claim because plaintiff failed to "plausibly allege" that conduct at issue was type employee was "employed to perform" or "actuated, at least in part, by a purpose to serve" employer); *Bissett*, 401 F. Supp. 3d at 495 ("[T]here is no conceivable explanation as to why the conduct giving rise to this case would serve [the defendant's] business."). Because Moss has failed to plead sufficient factual matter to plausibly show that Glon's was "acting in furtherance of [the University's] business" when he purportedly engaged in sex-based discrimination, *Bissett*, 401 F. Supp. 3d at 493 (citation and quotation omitted), the University cannot be vicariously liable for Glon's alleged conduct.

40148354.11

## V.    CONCLUSION

For all the foregoing reasons, the University respectfully requests that this Court dismiss the Complaint, with prejudice and in its entirety, for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

_s/ James A. Keller_
James A. Keller (PA 78955)
Amy L. Piccola (PA 208888)
Shane P. Simon (PA 319643)
SAUL EWING ARNSTEIN & LEHR LLP
Centre Square West
1500 Market St., 38th Floor
Philadelphia, PA 19102
P: 215-972-1964//8405//7160
james.keller@saul.com
amy.piccola@saul.com
shane.simon@saul.com

_Attorneys for Defendant The Pennsylvania State University_

34

40148354.11

## <u>Word Count Certification</u>

I hereby certify that the foregoing brief contains 8,100 words, as calculated by Microsoft Word 2020. By Order dated June 28, 2022, however, the Court permitted the University to file a brief in excess of 15 pages, but that does not exceed 40 pages. (Docket 14).


Dated:          July 1, 2022

                                        <u>*s/ James A. Keller*</u>
                                        James A. Keller (PA 78955)
                                        Amy L. Piccola (PA 208888)
                                        Shane P. Simon (319643)
                                        SAUL EWING ARNSTEIN & LEHR LLP
                                        Centre Square West
                                        1500 Market St., 38th Floor
                                        Philadelphia, PA 19102
                                        P: 215-972-1964//8405//7160
                                        james.keller@saul.com
                                        amy.piccola@saul.com
                                        shane.simon@saul.com

                                        *Attorneys for Defendant The Pennsylvania State University*

40148354.11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date set forth below, I caused a true and correct copy of the foregoing *Memorandum of Law in Support of the University's Motion to Dismiss Plaintiff's Complaint* and accompanying documents to be served upon all Counsel of Record via the Court's ECF System.


/s/ James A. Keller
James A. Keller, Esq.

Dated: July 1, 2022