**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Zara Moss, | : | |
| | : | |
| Plaintiff, | : | Case No. 4:22-cv-00529-MWB |
| | : | |
| v. | : | (Chief Judge Matthew W. Brann) |
| | : | |
| The Pennsylvania State University | : | |
| | : | |
| -and- | : | Electronically Filed |
| | : | |
| Maestro Wieslaw Glon (in his individual and official capacities), | : | |
| | : | |
| | : | |
| Defendants. | : | |

**BRIEF IN SUPPORT OF
THE PENNSYLVANIA STATE UNIVERSITY'S
<u>MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>**

James A. Keller (PA 78955)
Amy L. Piccola (PA 208888)
Shane P. Simon (PA 319643)
Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market St., 38th Floor
Philadelphia, PA 19102
P: 215-972-1964//8405//7160
james.keller@saul.com
amy.piccola@saul.com
shane.simon@saul.com

# **TABLE OF CONTENTS**

**Page**

I.   PROCEDURAL HISTORY ...............................................................3

II.  STATEMENT OF ALLEGED FACTS.............................................3

    A.   Moss's fencing career at the University. ...............................3

    B.   Moss's March 17 and April 7, 2021 meetings with
        the University. .......................................................................5

III. QUESTION PRESENTED. ...........................................................6

IV.  ARGUMENT. .................................................................................6

    A.   Applicable legal standard...................................................6

    B.   The Court should dismiss Moss's Title IX claim (Count I) because
        the allegations (1) do not rise to the level of either severe or
        pervasive sex-based harassment and (2) do not demonstrate how
        Moss was denied any educational benefit or opportunity. .................7

        1.   Moss fails to state a Title IX claim for deliberate indifference
            because the bulk of her allegations do not concern sex-based
            discrimination—and those that arguably do concern sex-
            based discrimination are insufficient to qualify as severe and
            pervasive under Title IX. ..........................................................9

        2.   Moss fails to plausibly plead a Title IX deliberate indifference
            claim because the University lacked actual knowledge of the
            alleged discrimination until March 10, 2021, and the
            Amended Complaint does not allege that Moss was subjected
            to further harassment after that date.....................................16

    C.   The Court should dismiss Count II ("Negligence/Gross Negligence")
        because the University did not owe a duty to Moss as a
        student-athlete. ...................................................................18

i

**D.** **The Court should dismiss Count III ("Failure to Train/Supervise") because Moss has failed to plausibly allege: (1) that the University knew or should have known of a reason to control Glon and (2) specific facts as to how the University failed to properly train its employees.** ..........................................................................22

    **1.** **The Court should dismiss Moss's negligent supervision claim because she has failed to allege that the University knew or should have known of a reason to "control" Glon** .................22

    **2.** **Moss's negligent training claim should be dismissed because she has failed to plausibly allege specific facts showing how the University allegedly failed to train its employees**. ............23

**E.** **Count IV ("Negligent and Intentional Infliction of Emotional Distress") must be dismissed because (1) the University's conduct was not "extreme and outrageous"; and (2) Moss has failed to plead a claim for negligence.** .......................................................25

    **1.** **The intentional and negligent infliction of emotional distress claims must be dismissed because Moss has not pled facts showing "extreme and outrageous" conduct.** .........................25

    **2.** **Moss's NIED claim should be dismissed because she has failed to plausibly allege that the University owed her a duty**. ........27

**F.** **The University is not vicariously liable for Glon's alleged actions because Moss has failed to allege sufficient facts that plausibly show that Glon's alleged actions were in furtherance of the University's mission.** ..........................................................28

**V.** **CONCLUSION** ..................................................................30

## <u>TABLE OF AUTHORITIES</u>

**FEDERAL CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................6, 7, 23

*B.W. v. Career Tech. Ctr. of Lackawanna Cty.*, 422 F. Supp. 3d 859
  (M.D. Pa. 2019) ....................................................................................................16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................23

*Belmont v. MB Inv. Partners*, 708 F.3d 470 (3d Cir. 2013) ..............................22, 23

*Bissett v. Verizon Wireless*, 401 F. Supp. 3d 487 (M.D. Pa. 2019) ...................29, 30

*Bougher v. Univ. of Pittsburgh,* 882 F. 2d 74 (3d Cir. 1989) ....................................8

*Williams v. Pennsylvania State Univ.*, 2020 WL 5291985
  (M.D. Pa. Sept. 4, 2020) .....................................................................................18

*Chinoy v. Pennsylvania State Univ.*, No. 11-CV-01263, 2012 WL 727965 (M.D.
  Pa. Mar. 6, 2012) .................................................................................................8

*Chisholm v. St. Marys City Sch. Dist. Bd. of Ed.*, 947 F. 3d 342
  (6th Cir. 2020) .................................................................................10, 11, 12, 13

*Chuy v. Phila. Eagles Football Club*, 595 F. 2d 1265 (3d Cir. 1979) .....................28

*Coleman v. Greene*, 845 F.3d 73 (3d Cir. 2017) .....................................................20

*Connelly v. Lane Const. Corp.*, 809 F.3d 780 (3d Cir. 2016) ...................................7

*Cunning v. West Chester Univ.*, 2021 WL 765729 (E.D. Pa. Feb. 25, 2021) .........17

*Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629
  (1999) .............................................................................................................13, 15

*Dobson v. Milton Hershey Sch.*, 2017 WL 3433638 (M.D. Pa. Aug. 10, 2017) .....19

*Dorley v. South Fayette Tp. School Dist.*, 129 F. Supp. 3d 220 (W.D. Pa. 2015) ...12

*Gov't of Virgin Islands v. Fonseca*, 274 F.3d 760 (3d Cir. 2001) ..........................20

*Hall v. Millersville Univ.*, 22 F. 4th 397 (3d Cir. 2022) ................................8, 11, 16

*Hershman v. Muhlenberg Coll.*, 17 F. Supp. 3d 454 (E.D. Pa. 2014)....................27

*Humphries v. Pennsylvania State Univ.*, 2021 WL 4355352
    (M.D. Pa. Sept. 24, 2021) ............................................................19, 21

*Humphries v. Pennsylvania State Univ.*, 2021 WL 5792832
    (M.D. Pa. Dec. 7, 2021).....................................................................19

*Humphries v. Pennsylvania State Univ.*, 492 F. Supp. 3d 393
    (M.D. Pa. 2020) ...............................................................2, 18, 19, 27

*Jennings v. Univ. of North Carolina*, 482 F.3d 686 (4th Cir. 2007) .......................10

*Jones v. Univ. of Detroit Mercy*, 527 F. Supp. 3d 945 (E.D. Mich. 2021)..............10

*Kleinknecht v. Gettysburg Coll.*, 989 F.2d 1360 (3d Cir. 1993)............18, 19, 20, 21

*Kling v. Univ. of Pittsburgh Med. Ctr.*, 2020 WL 2832008
    (W.D. Pa. May 8, 2020)....................................................................28

*Lansberry v. Altoona Area School Dist.*, 318 F. Supp. 3d 739
    (W.D. Pa. 2018) ...............................................................9, 10, 12, 13

*Lum v. Bank of Am.*, 361 F.3d 217 (3d Cir. 2004)..............................................6

*M.S. by and through Hall v. Susquehanna Twp. Sch, Dist.*, 969 F. 3d 120
    (3d Cir. 2020)...............................................................................8, 16

*MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565 (W.D. Pa. 2019).......27

*Moeck v. Pleasant Valley Sch. Dist.*, 179 F. Supp. 3d 442 (M.D. Pa. 2016) ....10, 14

*Oldham v. Pennsylvania State Univ.*, 2022 WL 1528305
    (M.D. Pa. May 13, 2022)............................................................passim

*re. O.P. v. Scranton Sch. Dist.*, 2012 WL 37090 (M.D. Pa. 2012)........................15

*S.K. v. North Allegheny School Dist.*, 168 F. Supp. 3d 786 (W.D. Pa. 2016).........16

*SJ Abstract v. Old Republic Nat'l Title Ins. Co.*, 2021 WL 4847803
    (E.D. Pa. Oct. 4, 2021)......................................................................25

*Swanger v. Warrior Run Sch. Dist.*, 346 F. Supp. 3d 689
    (M.D. Pa. 2018) .......................................................................8, 16, 17

*Trentadue v. Redmon*, 619 F. 3d 648 (7th Cir. 2010) ...............................................15

STATE CASES

*Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1116 (Pa. 2000) ...................................21

*Banyas v. Lower Bucks Hosp.*, 437 A.2d 1236 (Pa. Super. Ct. 1981).....................26

*Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36 (Pa. Super. Ct. 2000).........27

*Butler v. Flo-Ron Vending Co.*, 557 A.2d 730 (Pa. Super. Ct. 1989) .....................28

*Denton v. Silver Stream Nursing & Rehab. Ctr.*, 739 A.2d 571
    (Pa. Super. Ct. 1999)........................................................................................27

*Feleccia v. Lackawanna Coll.*, 215 A.3d 3 (Pa. 2019)................................19, 20, 21

*Hoy v. Angelone*, 720 A.2d 745 (Pa. 1998) .........................................................25, 26

*Manley v. Fitzgerald*, 997 A.2d 1235 (Pa. Commw. Ct. 2010)...............................25

*Papieves v. Lawrence*, 263 A.2d 118 (Pa. 1970)................................................25, 26

*Swisher v. Pitz*, 868 A.2d 1228 (Pa. Super. Ct. 2005)............................................25

*Wittrien v. Burkholder*, 965 A.2d 1229 (Pa. Super. Ct. 2009)................................18

FEDERAL STATUTES AND RULES

Title IX, 20 U.S.C. § 1681, *et seq.*.................................................................passim

20 U.S.C. § 1681(a) ............................................................................................9, 15

Fed. R. Civ. P. 12(b)(6)............................................................................................6

In 2021, Zara Moss successfully graduated from The Pennsylvania State University as a four time All-American member of the University fencing team, having twice been a national runner-up in NCAA fencing competitions. Now, after graduation, Ms. Moss has decided to sue the University and its head fencing coach, Wieslaw "Wes" Glon. The University has moved to dismiss Moss's Amended Complaint in its entirety, and files this brief in support.

Moss's Title IX claim (Count I), based on the University's alleged "deliberate indifference" to Glon's alleged harassment, must be dismissed for two reasons. *First*, most of Moss's allegations do not concern sex- or gender-based claims of harassment, and those that do describe conduct neither severe nor pervasive enough to meet the pleading requirements of Title IX. *Second*, even if the Court found that some of Moss's allegations constituted severe and pervasive sex-based harassment, and even if the Court determined that the University's response to Moss's report of such conduct constituted "deliberate indifference" (it did not), Moss still has not pled a viable Title IX claim because she fails to allege that she suffered *subsequent* harassment as a result of the claimed deliberate indifference.

Moss's negligence claim (Count II) also must be dismissed. While Moss claims that the University owed her a duty by virtue of a "special relationship" arising from Moss's status as a scholarship student-athlete, "Pennsylvania law does not recognize a special relationship between colleges and student-athletes that would impose a duty of

care." *Humphries v. Pennsylvania State Univ.*, 492 F. Supp. 3d 393, 407 (M.D. Pa. 2020) ("*Humphries I*") (Brann, C.J.).

Moss's claim for negligent supervision and training (Count III) also should be dismissed because Moss has failed to plausibly allege, with respect to negligent supervision, that the University knew or should have known of any reason to "control" Glon. With respect to negligent training, Moss has failed to plead specific facts showing how the University failed to properly train its employees.

Moss's claims for intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED") (Count IV) should be dismissed because the University's alleged conduct in failing to take Moss's claims seriously does not constitute "extreme and outrageous" emotional distress. Separately, the NIED claim must be dismissed because Moss has not pled a viable negligence claim against the University, and therefore has not pled an essential element of an NIED claim.

Finally, Moss's attempt to hold the University vicariously liable (Count V) is also unavailing because Moss has not pled plausible facts showing that Glon's purported harassment was committed in furtherance of the University's mission. The Court should dismiss Moss's Complaint against the University in its entirety.

## I.    PROCEDURAL HISTORY

Moss filed her Amended Complaint on July 15, 2022. *See* Amended Complaint ("Am. Compl.") (Doc. 18). The Amended Complaint purports to set forth five (5) causes of action against the University: (1) a "deliberate indifference" claim under Title IX, 20 U.S.C. §1681, *et seq.*; (2) a claim for "negligence/gross negligence"; (3) a claim for "failure to train/supervise"; (4) claims for negligent and intentional infliction of emotional distress; and (5) respondeat superior. The University submits this brief in support of its Motion to Dismiss the Amended Complaint, which was timely filed on July 29, 2022. (Doc. 19).

## II.   STATEMENT OF ALLEGED FACTS[1]

### A.    Moss's fencing career at the University.

Moss started fencing at the University in 2017 during her freshman year of college. Am. Compl. ¶ 11. She asserts that Glon, her fencing coach, almost immediately "hounded her about her weight," *id.*, and, despite her "strong performance, [] took every opportunity to degrade and verbally abuse [her]" including by purportedly telling her "she was a waste of his time and valuable scholarship money" and criticizing "everything she did[.]" *Id.* ¶ 12. Moss further alleges that Glon "singled out the women fencers" when he "screamed at them, telling them he

---

[1]    The University disagrees with and disputes many of the allegations set forth in the Amended Complaint, but acknowledges that the Court must accept any well-pleaded allegations in the Complaint as true for purposes of this motion. This Statement of Facts is therefore based on the allegations and/or documents quoted from, characterized, or referenced in the Amended Complaint.

regretted recruiting each of them." *Id.* ¶ 13. Moss also claims that Glon "physically abused" her during her freshman year when, during a lesson, Glon allegedly "forced [Moss] to fence him without equipment." Am. Compl. ¶ 15.

In January 2019, Glon allegedly told Moss she was "being overly emotional and sensitive because she was on her period" and "prohibited" Moss "from seeking medical attention and forced her to train despite" an alleged concussion. *Id.* ¶ 14. Moss claims that Glon's alleged abuse was "based on sex" and he "believed women fencers were weak and dramatic." *Id.* ¶ 17. As purported evidence of this latter point, Moss alleges that (on some unspecified day) Glon told her "she must have a bladder infection given how often she was using the restroom." *Id.*

Moss alleges that Glon "hurled" additional "sex-based criticisms" at her, telling her, for example, that the reason she was 'not good anymore' was because she 'needed a boyfriend.'" *Id.* ¶ 20. Moss also alleges that Glon forced her to compete and practice through injuries, but did not require the same of male fencers. Am. Compl. ¶¶ 22-23. Moss further alleges that Glon "expected the women fencers to don perfect hair and makeup[,]" "routinely and publicly demeaned and humiliated the women fencers for being on their periods," *id.* ¶¶ 30, 33, and that he required women fencers to sew and patch equipment "not only for themselves, but also for the male fencers." Moss also states that Glon "treated the men's captain as a true leader and representative for the team" while, by contrast, requiring women fencers to "stock[] the snack table[.]" *Id.* ¶

37. Moss further alleges that "[d]uring press interviews, Zara and her fellow women teammates were often told to sit there and look pretty." *Id.*

Moss makes additional allegations that Glon commented on her weight throughout her time at the University. *Id.* ¶¶ 18, 24. She claims that Glon "never attacked the male fencers when they gained weight—just Zara and other women fencers." Am. Compl. ¶ 18. Moss claims she developed an eating disorder and body dysmorphia because of Glon's "constant body shaming." *Id.* ¶¶ 19, 24. Although Moss claims that her "fencing performance took a hit because of" Glon's conduct, she also alleges that her second year performance was the same as her first—she finished second in the NCAA national championships both of those years. *Id.* at ¶¶ 20-21. She was also a four time All-American. *Id.* ¶ 1.

### B.   Moss's March 17 and April 7, 2021 meetings with the University.

Moss alleges that on March 10, 2021 she contacted Bob Boland, the University's Athletics Integrity Officer, to schedule a meeting. *Id.* at ¶ 25. Moss claims she met with Mr. Boland on March 17, 2021 "and reported [Glon]'s abuse" including the alleged "verbal abuse towards the women fencers and the danger Wes placed them in when he forced them to compete while injured." Am. Compl. ¶ 25. Moss asserts that Boland told her he had received prior reports concerning Glon, but also told her to wait to schedule another meeting until after the NCAA national championships to avoid "'rocking the boat.'" *Id.* ¶¶ 25-26.

5

Moss alleges that she met with Boland and others on April 7, 2021 and again "reported [Glon]'s misconduct[.]" *Id.* ¶ 27. Moss claims that Boland acknowledged her concerns and suggested further investigation was warranted, but ultimately dismissed her claims and she "never heard from Mr. Boland or Penn State again." *Id.* Moss graduated from the University in 2021. *See* Am. Compl. ¶ 1. She filed the Complaint in this matter on April 11, 2022, Doc. 1., and the Amended Complaint on July 15, 2022. Doc. 18.

## III.   QUESTION PRESENTED.

*Question Presented:*      Should this Court dismiss Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted?

*Suggested Answer: Yes.*

## IV.   ARGUMENT.

### A. Applicable legal standard.

A court may dismiss a complaint that on its face is insufficient to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a

motion to dismiss. *Iqbal*, 556 U.S. at 678. The United States Court of Appeals for the Third Circuit has explained that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must take note of the elements the plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief.

*Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quotation and citation omitted).

> **B.      The Court should dismiss Moss's Title IX claim (Count I) because the allegations (1) do not rise to the level of either severe or pervasive sex-based harassment and (2) do not demonstrate how Moss was denied any educational benefit or opportunity.**

In Count I, Moss claims that she was subjected to "harassment based on [her] sex" in the form of criticisms regarding her weight, being "inappropriately told [] she had a bladder infection," and being required to train while injured. Compl. ¶¶ 43-45. She further alleges that Glon made a remark about her period on one occasion, *id.* at ¶ 14, and infers that Glon called her "lazy" and "weak" because she was a woman. *Id.* at ¶ 534.

"[T]o proceed on a claim against an educational institution under Title IX, the student must establish that the institution was 'deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and

objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.'" *Swanger v. Warrior Run Sch. Dist.*, 346 F. Supp. 3d 689, 704 (M.D. Pa. 2018) (quoting *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999)); *Hall v. Millersville Univ.*, 22 F. 4th 397, 408 (3d Cir. 2022); *M.S. by and through Hall v. Susquehanna Twp. Sch, Dist.*, 969 F. 3d 120, 125 (3d Cir. 2020) ("[T]o be liable under Title IX's private right of action, an appropriate person must have actual knowledge of sex-based harassment and must respond with deliberate indifference.").

As an initial matter, the bulk of Moss's allegations relate to conduct outside the statute of limitations.[2] *See* Am. Compl. ¶¶ 11-24. These untimely allegations are not actionable and the Court should not consider them because courts in this circuit—including this Court—have refused to apply the continuing violations doctrine to Title IX claims. *See, e.g., Chinoy v. Pennsylvania State Univ.*, No. 11-CV-01263, 2012 WL 727965, at *6 (M.D. Pa. Mar. 6, 2012)[3] (declining to apply continuing violation doctrine to Title IX claims).

---

[2]    A two-year statute of limitations applies to Title IX claims. *Bougher v. Univ. of Pittsburgh,* 882 F. 2d 74, 77–78 (3d Cir. 1989). Moss filed her Complaint on April 11, 2022, but the majority of her claims are based on conduct that she alleges occurred in 2017, 2018, 2019, and the early part of 2020. *See, e.g.,* Am. Compl. at ¶ 11 (October 2017); ¶ 14 (January 2018); ¶ 19 (March 2019); ¶ 23 (early 2020).

[3]    Attachment "A."

Substantively, Moss has failed to allege a plausible Title IX "deliberate indifference" claim for two reasons. ***First***, the alleged harassment referenced by Moss was not "sex-based" and/or was not "severe or pervasive." ***Second***, the Complaint does not allege that Moss experienced sex-based harassment *after* March 17, 2021—the date on which she allegedly put the University on "actual notice" of the harassment—or that she was denied access to an educational benefit or opportunity because of the alleged harassment.

> **1.  Moss fails to state a Title IX claim for deliberate indifference because the bulk of her allegations do not concern sex-based discrimination—and those that arguably do concern sex-based discrimination are insufficient to qualify as severe and pervasive under Title IX.**

Title IX provides, in relevant part, that "[n]o person … shall, ***on the basis of sex***, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a) (emphasis added). Title IX protects only against sex- or gender-based discrimination. *See, e.g.*, *Lansberry v. Altoona Area School Dist.*, 318 F. Supp. 3d 739, 749 (W.D. Pa. 2018) (holding that "intense, persistent, and malicious bullying" was not sexual harassment because "sexual harassment requires a component directly related to one's gender.").

The majority of Moss's allegations are not "directly related to" her sex or gender. Moreover, the few allegations that do facially relate to gender are neither severe nor pervasive enough to support a Title IX claim, as discussed below.

> a.   *The majority of Moss's allegations do not concern sex-based harassment.*

As in *Lansberry*, 318 F. Supp. 3d at 749, or *Chisholm v. St. Marys City Sch. Dist. Bd. of Ed.*, 947 F. 3d 342, 352 (6th Cir. 2020), Moss's claims are grounded in coach-type bullying or misguided attempts to motivate, not sex- or gender-based harassment. "Title IX is not a civility code for the male coach who coaches women, and it is not meant to punish such a coach for off-color language that is not aimed to degrade or intimidate." *Jennings v. Univ. of North Carolina*, 482 F.3d 686, 698 (4th Cir. 2007).

In other words, when a coach's comments concern "toughness" or fitness for playing a sport generally, rather than "gender roles," the comments are not sex-based. *Chisholm*, 947 F. 3d at 352; *see also Moeck v. Pleasant Valley Sch. Dist.*, 179 F. Supp. 3d 442, 447 (M.D. Pa. 2016) (noting that vulgarity and "sporadic incidents are not sufficiently pervasive to establish a sexual harassment claim); *Jones v. Univ. of Detroit Mercy*, 527 F. Supp. 3d 945, 950 (E.D. Mich. 2021) (coach's "'locker room talk'" while "crude and inappropriate" was not "severe, pervasive, and objectively offensive" under Title IX) (citation and quotation omitted).

Here, Moss alleges that Glon "believed women athletes were simply not tough enough" and called them "weak" and "lazy." Am. Compl. at ¶ 38. As the Sixth Circuit observed, though: "[t]oughness, while sometimes celebrated in men, is certainly not discouraged in women, especially in a professional or team setting." *Chisholm*, 947 F. 3d at 352. The Sixth Circuit further noted that the coach's abusive language in *Chisholm* "targeted a fundamental requirement for football players—toughness." *Id.* Certainly in fencing—like football—toughness is not simply a desirable trait: it is a prerequisite. Challenging a student-athlete's toughness may be a debatable coaching tactic, but it has nothing to do with sex or gender.

Moss also alleges that Glon disciplined male and female fencers differently. Am. Compl. at ¶ 35. She alleges that if a female fencer "had a minor infraction[,]" Glon would "publicly shame them" or "strip[] them of their leadership titles[,]" but Glon would overlook more serious infractions committed by male fencers. *Id.* But, like so much of Moss's pleading she does not plead facts to support her conclusory allegation.[4] Notably, Moss also does not allege that Glon ever "publicly shamed" <u>her</u> for a minor infraction or took any leadership role away from her because of her sex.

---

[4] Even if Moss had pled sufficient facts concerning alleged harassment of other fencers, she lacks standing to assert those claims. A Title IX deliberate indifference claim turns on whether alleged sex-based harassment experienced *by the plaintiff* was severe and pervasive—not whether alleged harassment experienced by *others* meets that standard. *See, e.g.*, *Hall*, 22 F. 4th at 411. Moss cannot vicariously assert others' experiences as support for her own claims.

Moss also alleges that Glon told "her she was a waste of his time and valuable scholarship money" and that she was "worthless[.]" Am. Compl. ¶¶ 12, 99. Such purported statements are akin to those in *Chisholm* where a coach stated "it was impossible to win with players who wasted their talents" like the *Chisholm* plaintiff: the statements may be mean or of questionable motivational value, but they do not plausibly suggest sex-based harassment sufficient to sustain a claim under Title IX. 947 F. 3d at 347.

Moss also claims that Glon's purported "abuse was particularly demeaning and humiliating because it was based on . . . sex[,]" but she supports this circular contention by alleging that Glon "told [Moss] she must have a bladder infection given how often she was using the restroom." Am. Compl. ¶ 17. Nothing about this comment is based on sex or gender. *See Dorley v. South Fayette Tp. School Dist.*, 129 F. Supp. 3d 220, 236 (W.D. Pa. 2015) ("[W]here one factual assertion negates an essential element of a contrary assertion, that conflict cannot stand, absent sufficient explanation[.]"). Similarly, Moss's allegation that Glon forced her to "fence him without equipment[,]" Am. Compl. ¶ 15, is not tethered to any factual allegation that Glon did not permit her to use protective gear *because of her sex. Id.*

What Moss describes are, at most, actions allegedly taken by Glon to "humiliate, ridicule, and intimidate" her. Am. Compl. ¶ 57. But humiliation, ridicule,

12

intimidation, and bullying, even if true, do not equate to sex-based discrimination. *Lansberry*, 318 F. Supp. 3d at 749.

> b. *Moss's few allegations that could arguably constitute sex-based conduct do not qualify as severe and pervasive harassment.*

Title IX does not protect against all sex-based discrimination, only against sex-based discrimination that is "so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Davis*, 526 U.S. at 633. In the realm of athletics "where emotions and adrenaline can run high, it is not unheard of for coaches and players alike to use offensive or gendered language, especially in the heat of a game." *Chisholm*, 947 F. 3d at 352-53. Thus, while some coaches may engage in conduct that is "less than laudable," such conduct will "not meet the high bar for severe, pervasive, and objectively offensive conduct." *Id.* (citation omitted).

Moss's Amended Complaint lacks well-pleaded facts to plausibly support a claim of "severe" or "pervasive" sexual harassment. The only potentially actionable allegations are that Glon called Moss "lazy" and a "disappointment" for not fencing through an injury while permitting a male fencer to rest when he had "the same injury," and Glon's alleged continuing criticism of Moss's "physical appearance and weight." Am. Compl. ¶¶ 22, 24. Even if these allegations could be construed as sex-based—which is questionable—courts in the Third Circuit have held that "sporadic

and isolated incidents of sexual harassment fail to give rise to a Title IX claim."
*Lansberry*, 318 F. Supp. 3d at 752 (citations omitted).

Moreover, even when *all* of Moss's allegations are considered together (*i.e.*, even those that are not actionable), they are neither severe nor pervasive enough to support a claim under Title IX. *See Moeck*, 179 F. Supp. 3d at 447-48. First, as detailed above, the majority of Moss's alleged interactions with Glon were not sex-based. Second, the handful of allegations that could be construed as sex-based relate to sporadic verbal comments or actions that are too isolated and attenuated to constitute "pervasive" sex-based harassment. *See id.* at 447-48 (fewer than ten "sexually-tinged" comments over the course of two or three years "not sufficiently pervasive to establish a sexual harassment claim."). Third, in assessing the severity of the alleged sex-based harassment, a court must consider whether there was any physical contact. *Id.* at 448 Here, though, Moss has not alleged a single instance of physical contact *based on Moss's sex*.

Finally, Moss's conclusory allegation that the putative sex-based harassment was severe, pervasive, and objectively offensive enough that it "effectively barred [Moss's] access to the educational opportunity her fencing scholarship provided" is unsupported by any well-pleaded facts. Am. Compl. ¶ 41. Rather, Moss's own Amended Complaint demands a contrary conclusion. Moss made full use of her scholarship, earned a degree from Penn State as an honors student, *id.* ¶ 1, and

graduated as one of the University's most successful and highly decorated fencers. *See id.* ¶¶ 1, 21.

Where a plaintiff fails to plead facts to show *how* she was allegedly denied educational benefits, she has failed to state a Title IX claim. *See, e.g.*, *Davis*, 526 U.S. at 653-54. Here, Moss has not alleged that her grades suffered, that she quit fencing, that she left the University, or that Glon's alleged misconduct had any other impact on her educational experience.[5] *See Price ex re. O.P. v. Scranton Sch. Dist.*, 2012 WL 37090, at *6 (M.D. Pa. 2012);[6] *see also Trentadue v. Redmon*, 619 F. 3d 648, 654 (7th Cir. 2010) (plaintiff not deprived of educational benefit or opportunity where her grades did not suffer, she did not miss school, and she graduated with a high class rank). There is insufficient factual support for Moss's conclusion that she was "effectively barred" from the "educational opportunity her fencing scholarship provided." Am. Compl. ¶ 41.

---

[5] Moss's claim that the alleged abuse was "so severe she had to forego competing internationally" is insufficient. Am. Compl. ¶ 22. Title IX is concerned only with access to "educational" benefits and opportunities "provided by the school." 20 U.S.C. § 1681(a); *Davis*, 526 U.S. at 650. Moss has not alleged facts showing that the international competitions she ceased competing in were "educational opportunities or benefits provided by" the University.

[6] Attachment "B."

**2.   Moss fails to plausibly plead a Title IX deliberate indifference claim because the University lacked actual knowledge of the alleged discrimination until March 10, 2021, and the Amended Complaint does not allege that Moss was subjected to further harassment after that date.**

A Title IX funding recipient has actual notice when it "knows the underlying facts, indicating sufficiently substantial danger to students, and was therefore aware of the danger." *Hall*, 22 F. 4th at 410 (quotation and citation omitted). "Such knowledge will be deemed to be present where the victim of the harassment reported to the events to an 'appropriate person' who is, at a minimum, 'an official of the recipient entity with authority to take corrective action to end the discrimination.'"[7] *S.K. v. North Allegheny School Dist.*, 168 F. Supp. 3d 786, 800-01 (W.D. Pa. 2016) (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)). Actual notice means more than simply a report of inappropriate conduct. *Swanger*, 346 F. Supp. 3d at 705.

Here, Moss alleges that she met with Bob Boland, the University's Athletics Integrity Officer, on March 17, 2021 "and reported [Glon's] abuse." Am. Compl. ¶ 25. Taking these allegations as true, the earliest that the University would have had "actual notice" of Moss's claims was on March 17, 2021.[8] Moss contends she had

---

[7] Notice to the alleged harasser (even one with authority to address harassment) is insufficient because the alleged harasser is not an "appropriate person" to correct the harassment he or she is allegedly perpetrating. *Hall*, 969 F.3d at 126.

[8] Moss discusses distinct claims brought by Jennifer Oldham, a private fencing coach unaffiliated with the University. Am. Compl. ¶ 34. This is irrelevant to the "actual knowledge" inquiry in *this* lawsuit, which focuses on whether an "appropriate person was personally aware of facts demonstrating a real danger to

another meeting with Boland, along with other University officials, on April 7, 2021. *Id.* ¶ 27. She claims that after the April 7, 2021 meeting she "never heard from Mr. Boland or [the University] again." *Id.*

Even if the University's response to Moss's complaints at those meetings constituted "deliberate indifference"—which the University disputes—that is not enough. For a plausible claim to proceed, "[t]he Title IX funding recipient's deliberate indifference must subject the students to further harassment, to wit, the indifference must 'cause students to undergo harassment or make them liable or vulnerable to it.'" *Swanger*, 346 F. Supp. 3d at 705 (quoting *Davis*, 526 U.S. at 644-45)). In other words, deliberate indifference without any subsequent harm is not enough.

Here, the Amended Complaint does not allege that Moss was subjected to further harassment from Glon (or anyone else) after her meetings with Boland. In fact, it seems a near certainty, per Moss's own pleading, that she graduated and left the University shortly after these meetings. Am. Compl. ¶ 1. The lack of subsequent harassment mandates dismissal of Moss's Title IX deliberate indifference claim. *Cunning v. West Chester Univ.*, 2021 WL 765729, at *3-4 (E.D. Pa. Feb. 25, 2021)

---

his or her student body." *B.W. v. Career Tech. Ctr. of Lackawanna Cty.*, 422 F. Supp. 3d 859, 880 (M.D. Pa. 2019) (citation omitted). Moreover, as this Court has previously ruled, Jennifer Oldham had no connection with the University. *Oldham v. Pennsylvania State Univ.*, 2022 WL 1528305, at *19 (M.D. Pa. May 13, 2022) (Brann, C.J.) (Attachment "C."). In sum, Moss's allegations concerning Ms. Oldham cannot suffice to meet the "actual knowledge" requirement for Moss's case.

(granting motion to dismiss Title IX deliberate indifference claim where plaintiff "has not plausibly alleged that the [university's] deliberate indifference … caused her to be subjected to additional acts of harassment[.]").[9]

### C. The Court should dismiss Count II ("Negligence/Gross Negligence") because the University did not owe a duty to Moss as a student-athlete.

"In any negligence case, the plaintiff must prove duty, breach, causation and damages." *Wittrien v. Burkholder*, 965 A.2d 1229, 1232 (Pa. Super. Ct. 2009). Here, Moss alleges that the University "owed [her] a duty to protect her from physical and psychological abuse by one of its employees." Am. Compl. ¶ 69. Moss further claims that the University's alleged duty to "protect" her from Glon's purported harassment arose from the University's "special relationship with Zara Moss, a college athlete it recruited to fence for its elite fencing team and awarded … a full scholarship[.]" *Id.* ¶¶ 75-76.

But the University did not owe Moss a duty because "Pennsylvania law does not recognize a special relationship between colleges and student-athletes that would impose a duty of care." *Humphries I*, 492 F. Supp. 3d at 407 (Brann, C.J.); *c.f. Williams v. Pennsylvania State Univ.*, 2020 WL 5291985, at * 9 (M.D. Pa. Sept. 4, 2020)[10] (Brann, C.J.) ("Williams being a student at Penn State does not create the requisite 'special relationship.'"). The only cases that have found otherwise involve

---

[9]   Attachment "D."
[10]  Attachment "E."

circumstances where colleges failed to have medical personnel available to treat student-athletes during athletic events. *Kleinknecht v. Gettysburg Coll.*, 989 F.2d 1360, 1366-67 (3d Cir. 1993) (fatal heart attack during practice); *Feleccia v. Lackawanna Coll.*, 215 A.3d 3, 331 (Pa. 2019) (injuries to football players in practice).[11]

This Court has already conducted a painstaking analysis of *Kleinknecht* and *Feleccia* in examining an asserted "special relationship" between a university and a student-athlete on at least three occasions and, each time, rejected the argument that *Kleinknecht* and *Feleccia* support the conclusion that "colleges owe their student-athletes a general duty to protect them and ensure their well-being[.]" *Humphries I*, 492 F. Supp. 3d at 408.[12]

As this Court has recognized, *Kleinknecht* and *Feleccia* "involved a much narrower question" than whether a college owes a generalized duty of care to its

---

[11]  In *Feleccia*, the Pennsylvania Supreme Court considered "whether to adopt a broader rule finding that colleges in Pennsylvania owe a blanket duty to have medical personnel available at athletic events but was not willing to expand a college's duty to such an extent." *Humphries I*, 492 F. Supp. 3d at 408 (citation omitted).

[12]  *Humphries v. Pennsylvania State Univ.*, 2021 WL 4355352, at *12-14 (M.D. Pa. Sept. 24, 2021) ("*Humphries II*") (Brann, C.J.) ("That the Pennsylvania Supreme Court decided not to create a new duty in *Feleccia* is, by itself, persuasive enough evidence that the Pennsylvania Supreme Court would not adopt *Kleinknecht*'s special relationship theory if this case were before it.") (Attachment "F."); *Humphries v. Pennsylvania State Univ.*, 2021 WL 5792832, at *5-6 (M.D. Pa. Dec. 7, 2021)("*Humphries III*") (Brann, C.J.) ("Plowing forward to recognize an even broader duty when the Pennsylvania Supreme Court refused to recognize a narrower one would be unfaithful to this Court's role when applying state law.") (Attachment "G.").

student-athletes. *Humphries II*, 2021 WL 4355352, at *12; *see also Dobson v. Milton Hershey Sch.*, 2017 WL 3433638, at *3 n.5 (M.D. Pa. Aug. 10, 2017) (noting that *Kleinknecht* "involved a narrow holding applicable only in circumstances concerning a medical emergency during school-sponsored athletic activity.") (Conner, J.).[13] These cases do not support an argument that the University had a "special relationship" with Moss.

Finally, the recent decision of the Pennsylvania Superior Court in *Jordan v. Pennsylvania State University* does not support the duty that Moss seeks to create in this case for three reasons. 276 A.3d 751, 772-74 (Pa. Super. Ct. 2022), *rearg. den.* (July 13, 2022). **First**, *Jordan*—like *Kleinknecht* and *Feleccia*—was a case concerning allegedly improper or insufficient medical care for college student-athletes. 276 A.3d at 772. **Second**, the *Jordan* court's conclusion that the university "owed a duty to Plaintiff by virtue of his status as a student-athlete" who was recruited and participated in intercollegiate athletic events on the university's behalf was *dicta* because it came after the court had already affirmed dismissal of the plaintiff's negligence claim on other grounds. 276 A.3d at 772-73. *Coleman v. Greene*, 845 F.3d 73, 76 (3d Cir. 2017) ("A dictum is a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding.") (citation and quotation omitted). *Dicta* "is not part of the holding, and not

---

[13]   Attachment "H."

precedential." *Gov't of Virgin Islands v. Fonseca*, 274 F.3d 760, 764 (3d Cir. 2001). This Court should not rely on *obiter dicta* to create a new legal duty for colleges and universities in Pennsylvania. **Third**, in deciding *Jordan*, it is respectfully submitted that the Superior Court made the same mistakes that the Pennsylvania Supreme Court identified in the Superior Court's earlier erroneous attempt to create a new duty in *Feleccia*, namely: relying upon *Kleinknecht* and failing to conduct an analysis under *Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1116 (Pa. 2000), which requires a court to analyze five factors before creating a new common law duty of care. *See Jordan*, 276 A.2d at 773 (citing *Kleinknecht*, 989 F.2d at 1369); *Feleccia*, 215 A.3d at 12-13.

As this Court explained in *Humphries II*, the "Pennsylvania Supreme Court found that the Superior Court panel erred in relying on *Kleinknecht* to find that the college owed its injured athlete a duty to provide qualified medical personnel" and "chastised the Superior Court for its reliance on 'non-binding federal case law' before launching into the meat of its critique: the law had changed since *Kleinknecht* was decided." 2021 WL 4355352, at *13 (quoting *Feleccia*, 215 A.3d at 13). In sum, *Jordan* does not support finding a special relationship between a college and its student-athletes that would warrant the creation of a new and undefined duty of care. The Court should therefore dismiss Count II of the Amended Complaint because the University did not owe a duty to Moss.

**D.    The Court should dismiss Count III ("Failure to Train/Supervise") because Moss has failed to plausibly allege: (1) that the University knew or should have known of a reason to control Glon and (2) specific facts as to how the University failed to properly train its employees.**

Count III of the Amended Complaint is a claim against the University for negligent failure to train and/or supervise its employees "on proper coaching techniques, sex discrimination, stereotype-based sex discrimination, and Title IX requirements." Am. Compl. ¶ 85. "Because Pennsylvania courts have promulgated a specific standard for negligent supervision claims, but not for negligent training claims," each claim is addressed separately. *Oldham*, 2022 WL 1528305, at 22.

**1.    The Court should dismiss Moss's negligent supervision claim because she has failed to allege that the University knew or should have known of a reason to "control" Glon.**

To support a negligent supervision claim under Pennsylvania law, a plaintiff must show that her loss resulted from: "(1) a failure to exercise ordinary care to prevent an intentional harm by an employee acting outside the scope of his employment, (2) that is committed on the employer's premises, (3) when the employer knows or has reason to know of the necessity and ability to control the employee." *Belmont v. MB Inv. Partners*, 708 F.3d 470, 487-88 (3d Cir. 2013) (citation omitted). The plaintiff must prove "the four elements of common law negligence, *i.e.*, duty, breach, causation, and damages." *Belmont*, 708 F.3d at 487-88 (citation omitted).

22

Here, Moss's has not alleged sufficient facts showing that the University knew or should have known of the necessity to control Glon. *Belmont*, 708 F. 3d at 491. Although Moss alleges that the University had "actual notice of issues of sex discrimination" by Glon, she has failed to plead sufficient factual matter to support this allegation.[14] Instead, the Amended Complaint alleges only that a University employee stated that he "had already received numerous reports of sexism from Wes on the fencing team." Am. Compl. ¶ 26. This unsupported assertion is insufficient to "nudge[ Moss's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.[15] The Court should therefore dismiss Moss's claim for negligent supervision.

> **2.    Moss's negligent training claim should be dismissed because she has failed to plausibly allege specific facts showing how the University allegedly failed to train its employees.**

Pennsylvania courts have not yet outlined the contours or pleading requirements for a negligent training claim. *Oldham*, 2022 WL 128305, at *24 (citation omitted). Federal courts faced with negligent training claims therefore have

---

[14] Moss's claims that Glon's involvement with allegations made by Jennifer Oldham, a private fencing instructor unaffiliated with the University, do not support her negligent training claim. *See* Footnote 7, *supra*.

[15] While Moss alleges that "[d]iscovery ... will reveal information including which individuals made these reports, which individuals received the reports, the form of the reports, the substance of the reports, and the dates of the reports[,]" Am. Compl. ¶ 48, the *Twombly/Iqbal* standard "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

applied a "normal negligence standard[,]" and held that "to prove a prima facie case for negligence [on a failure to train theory], plaintiffs must show that corporate defendants (1) had a duty to train their employees; (2) breached that duty; and (3) the breach of that duty caused the plaintiffs' harm." *Oldham*, 2022 WL 1528305, at *24 (citation and quotation omitted). For the second prong, "a plaintiff must allege in specific terms how the defendant breached its duty to properly train individual employees; mere conclusory statements that amount to nothing more than a recitation of the elements of the claim are insufficient." *Id.* at *25 (citation and quotation omitted).

Here, Moss alleges that the University "had a duty to train its employees like Wes Glon on proper coaching techniques, sex discrimination, stereotype-based sex discrimination, and Title IX requirements." Am. Compl. ¶ 85. Other than this single, conclusory allegation, Moss "provides no information on what trainings occurred, who did (or did not) receive them, and how they were purportedly deficient. Absent some specific facts showing how Penn State … breached [its] duty to properly train [its] employees and/or staff, [Moss] cannot sustain a claim for negligent training." *Oldham*, 2022 WL 1528305, at 25. The Court should therefore dismiss Moss's claim for negligent training.

**E.     Count IV ("Negligent and Intentional Infliction of Emotional Distress") must be dismissed because (1) the University's conduct was not "extreme and outrageous"; and (2) Moss has failed to plead a claim for negligence.**

**1.     The intentional and negligent infliction of emotional distress claims must be dismissed because Moss has not pled facts showing "extreme and outrageous" conduct.**

Moss's intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED") claims must be dismissed because she does not allege any "extreme and outrageous" conduct on the part of the University. *Manley v. Fitzgerald*, 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010); *SJ Abstract v. Old Republic Nat'l Title Ins. Co.*, 2021 WL 4847803, at *6 (E.D. Pa. Oct. 4, 2021) (severe emotional distress required for NIED claim).[16] A court must determine whether the alleged conduct, as pleaded, rises to the level of "extreme and outrageous" as a threshold issue. *Swisher v. Pitz*, 868 A.2d 1228, 1231 (Pa. Super. Ct. 2005).

Conduct is "extreme and outrageous" when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society[.]" *Hoy v. Angelone*, 720 A.2d 745, 753-54 (Pa. 1998) (citation and quotation omitted). Consequently, only cases asserting "the most egregious conduct" imaginable in society meet the "extreme and outrageous" standard. *See Papieves v. Lawrence*, 263

---

[16] Attachment "I."

A.2d 118, 121-22 (Pa. 1970) (killed plaintiff's son with car; failed to notify authorities; buried body in field); *Banyas v. Lower Bucks Hosp.*, 437 A.2d 1236, 1239 (Pa. Super. Ct. 1981) (fabricated medical records to suggest plaintiff had killed third-party, leading homicide indictment). "[S]exual harassment alone does not rise to the level of outrageousness necessary to make out a cause of action for intentional infliction of emotional distress." *Hoy*, 720 A.2d at 754 (citation and quotation omitted).

Moss's description of the University's alleged conduct does not rise to the level necessary to qualify as "extreme and outrageous." Moss's emotional distress claims focus on the University's alleged "actions and/or omissions" with respect to its alleged duty "to act in good faith and take [Plaintiff's] reports against Glon seriously." Am. Compl. at ¶ 96. Failing to take a student athlete's claim about coaching misconduct seriously is hardly the same as killing someone's child, *Papieves*, 263 A.2d 118, 121-22, or framing someone for homicide. *Banyas*, 437 A.2d 1236, 1239. Indeed, in *Oldham*, this Court held that the University's alleged failure to properly handle a plaintiff's reports of coaching misconduct was not "'so outrageous,' so 'atrocious,' so 'utterly intolerable' as to support a claim for IIED." 2022 WL 1528305, at *16, *28. So too here. Moss's IIED claim must be dismissed for this reason.

Finally, the Amended Complaint is devoid of any facts that plausibly suggest that *the University*'s alleged conduct in handling Moss's Title IX claims caused her to

suffer any emotional distress—let alone corresponding physical harm. *See* Am. Compl. at ¶ 99 (focusing solely on Glon's alleged abuse). Moss's IIED and NIED claims against the University should be dismissed.

### 2. Moss's NIED claim should be dismissed because she has failed to plausibly allege that the University owed her a duty.

In Pennsylvania, "[t]he crux of a [NIED] claim is that [defendants] breached some duty they owed to [plaintiff] and that the breach injured [her]." *Denton v. Silver Stream Nursing & Rehab. Ctr.*, 739 A.2d 571, 578 (Pa. Super. Ct. 1999). Thus, to succeed on a NIED claim, a plaintiff must establish a prima facie case of negligence. *See Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 45 (Pa. Super. Ct. 2000) ("[A]bsent a finding of negligence, the negligent infliction of emotional distress claim cannot survive.").

Here, as addressed in Section IV(C), *supra*, "Pennsylvania law does not recognize a special relationship between colleges and student-athletes that would impose a duty of care." *Humphries I*, 492 F. Supp. 3d at 407. Thus, the federal courts in the Commonwealth have concluded that "… Pennsylvania courts would not extend liability for the NIED tort to a case involving a relationship between a school and its student[.]" *MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565, 594 (W.D. Pa. 2019) (*Hershman v. Muhlenberg Coll.*, 17 F. Supp. 3d 454, 460 (E.D. Pa. 2014) (granting motion to dismiss student's NIED claim against college due to lack of

special relationship); *Kling v. Univ. of Pittsburgh Med. Ctr.*, 2020 WL 2832008, at *4 (W.D. Pa. May 8, 2020)[17] (same).

Moss's NIED claim must be dismissed because she did not have a special relationship with the University. *Jordan*, 276 A.3d at 774 (dismissing student-athlete's NIED claim against university because he could not show university breached a duty owed to him).

**F.    The University is not vicariously liable for Glon's alleged actions because Moss has failed to allege sufficient facts that plausibly show that Glon's alleged actions were in furtherance of the University's mission.**

Count V of the Complaint alleges that the University is vicariously liable for Glon's alleged sex-based harassment and resulting emotional distress under the doctrine of respondeat superior. Am. Compl. at ¶¶ 109-114. Under Pennsylvania law, an employer can be held liable for the torts of its employee only when the employee's conduct falls within the scope of employment. *Chuy v. Phila. Eagles Football Club*, 595 F. 2d 1265, 1276 (3d Cir. 1979). An employee's conduct does **not** fall within the scope of employment if it is "different in kind from that authorized" or "too little actuated by a purpose to serve the [employer]." *Butler v. Flo-Ron Vending Co.*, 557 A.2d 730, 736 (Pa. Super. Ct. 1989) (citation and quotation omitted). "If the facts fail to support a reasonable inference that the employee was acting in furtherance of his employer's business, the [employee's] conduct falls outside the scope of his

---

[17] Attachment "J."

employment as a matter of law." *Bissett v. Verizon Wireless*, 401 F. Supp. 3d 487, 493 (M.D. Pa. 2019) (citation and quotation omitted).

Here, Moss's conclusory allegations are insufficient to support her assertion of vicarious liability against the University. Moss claims that Glon and the University's actions were in furtherance of "financial interests" and "driven by Penn State placing money and prestige over the safety of its student athletes." Am. Compl. ¶ 95. But there are no facts pled to support this conclusion. Further, Moss's allegations again contradict themselves. Moss contends that Glon's purported harassment was caused by a desire to "get results for Penn State at all costs[,]" *id.* ¶ 113, while also claiming that her "fencing performance took a hit because of [Glon]'s conduct[,]" *id.* ¶ 20, and she would miss practice by "escaping to the bathroom" to avoid Glon. *Id.* ¶ 17. In other words, the specific facts pled by Moss indicate that Glon's purported tactics did *not* get results and did *not* lead to wins. Rather, if taken as true, Moss's allegations suggest that Glon's actions sidelined one of the University's most talented fencers: an outcome inimical to the University's odds of winning.

In any event, suffice to say that Glon was not employed by the University to discriminate against female student-athletes or otherwise diminish the abilities of the student-athletes he coached, and Plaintiff could not and does not plausibly plead facts to the contrary. *Bissett*, 401 F. Supp. 3d at 495 ("[T]here is no conceivable explanation as to why the conduct giving rise to this case would serve [the defendant's]

business."). The University cannot be vicariously liable for Glon's alleged conduct because Moss has failed to plead sufficient factual matter to plausibly show that Glon's was "acting in furtherance of [the University's] business" when he purportedly engaged in sex-based discrimination. *Id.* at 493 (citation and quotation omitted).

## V.      CONCLUSION

The University respectfully requests that this Court dismiss the Complaint, with prejudice and in its entirety, for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), along with any other, further relief the Court deems proper, equitable, and just.

<div style="margin-left:40%;">

Respectfully submitted,
*s/ James A. Keller*
James A. Keller (PA 78955)
Amy L. Piccola (PA 208888)
Shane P. Simon (PA 319643)
SAUL EWING ARNSTEIN & LEHR LLP
Centre Square West
1500 Market St., 38th Floor
Philadelphia, PA 19102
P: 215-972-1964//8405//7160
james.keller@saul.com
amy.piccola@saul.com
shane.simon@saul.com

*Attorneys for Defendant*
*The Pennsylvania State University*

</div>

Dated: August 12, 2022

## **Word Count Certification**

I hereby certify that the foregoing brief contains 7,368 words, as calculated by Microsoft Word 2020. By Order dated August 4, 2022, however, the Court permitted the University to file a brief in excess of 15 pages, but that does not exceed 30 pages. (Doc. 24).

Dated: August 12, 2022

> *s/ James A. Keller*
> James A. Keller (PA 78955)
> Amy L. Piccola (PA 208888)
> Shane P. Simon (319643)
> SAUL EWING ARNSTEIN & LEHR LLP
> Centre Square West
> 1500 Market St., 38th Floor
> Philadelphia, PA 19102
> P: 215-972-1964//8405//7160
> james.keller@saul.com
> amy.piccola@saul.com
> shane.simon@saul.com
>
> *Attorneys for Defendant The Pennsylvania State University*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date set forth below, I caused a true and correct copy of the foregoing *Memorandum of Law in Support of the University's Motion to Dismiss Plaintiff's Amended Complaint* and accompanying documents to be served upon all Counsel of Record via the Court's ECF System.

<u>/s/ James A. Keller</u>
James A. Keller, Esq.

Dated: August 12, 2022